# GIDEON *v.* WAINWRIGHT, CORRECTIONS DIRECTOR.

No. 155. Argued January 15, 1963.—Decided March 18, 1963.

*Abe Fortas,* by appointment of the Court, 370 U. S. 932, argued the cause for petitioner. With him on the brief were *Abe Krash* and *Ralph Temple.*

*Bruce R. Jacob,* Assistant Attorney General of Florida, argued the cause for respondent. With him on the brief were *Richard W. Ervin,* Attorney General, and *A. G. Spicola, Jr.,* Assistant Attorney General.

*J. Lee Rankin,* by special leave of Court, argued the cause for the American Civil Liberties Union et al., as *amici curiae,* urging reversal. With him on the brief were *Norman Dorsen, John Dwight Evans, Jr., Melvin L. Wulf, Richard J. Medalie, Howard W. Dixon* and *Richard Yale Feder.*

*George D. Mentz,* Assistant Attorney General of Alabama, argued the cause for the State of Alabama, as

*amicus curiae,* urging affirmance. With him on the brief were *MacDonald Gallion,* Attorney General of Alabama, *T. W. Bruton,* Attorney General of North Carolina, and *Ralph Moody,* Assistant Attorney General of North Carolina.

A brief for the state governments of twenty-two States and Commonwealths, as *amici curiae,* urging reversal, was filed by *Edward J. McCormack, Jr.,* Attorney General of Massachusetts, *Walter F. Mondale,* Attorney General of Minnesota, *Duke W. Dunbar,* Attorney General of Colorado, *Albert L. Coles,* Attorney General of Connecticut, *Eugene Cook,* Attorney General of Georgia, *Shiro Kashiwa,* Attorney General of Hawaii, *Frank Benson,* Attorney General of Idaho, *William G. Clark,* Attorney General of Illinois, *Evan L. Hultman,* Attorney General of Iowa, *John B. Breckinridge,* Attorney General of Kentucky, *Frank E. Hancock,* Attorney General of Maine, *Frank J. Kelley,* Attorney General of Michigan, *Thomas F. Eagleton,* Attorney General of Missouri, *Charles E. Springer,* Attorney General of Nevada, *Mark McElroy,* Attorney General of Ohio, *Leslie R. Burgum,* Attorney General of North Dakota, *Robert Y. Thornton,* Attorney General of Oregon, *J. Joseph Nugent,* Attorney General of Rhode Island, *A. C. Miller,* Attorney General of South Dakota, *John J. O'Connell,* Attorney General of Washington, *C. Donald Robertson,* Attorney General of West Virginia, and *George N. Hayes,* Attorney General of Alaska.

*Robert Y. Thornton,* Attorney General of Oregon, and *Harold W. Adams,* Assistant Attorney General, filed a separate brief for the State of Oregon, as *amicus curiae.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner was charged in a Florida state court with having broken and entered a poolroom with intent to commit a misdemeanor. This offense is a felony under

Florida law. Appearing in court without funds and without a lawyer, petitioner asked the court to appoint counsel for him, whereupon the following colloquy took place:

> "The COURT: Mr. Gideon, I am sorry, but I cannot appoint Counsel to represent you in this case. Under the laws of the State of Florida, the only time the Court can appoint Counsel to represent a Defendant is when that person is charged with a capital offense. I am sorry, but I will have to deny your request to appoint Counsel to defend you in this case.
>
> "The DEFENDANT: The United States Supreme Court says I am entitled to be represented by Counsel."

Put to trial before a jury, Gideon conducted his defense about as well as could be expected from a layman. He made an opening statement to the jury, cross-examined the State's witnesses, presented witnesses in his own defense, declined to testify himself, and made a short argument "emphasizing his innocence to the charge contained in the Information filed in this case." The jury returned a verdict of guilty, and petitioner was sentenced to serve five years in the state prison. Later, petitioner filed in the Florida Supreme Court this habeas corpus petition attacking his conviction and sentence on the ground that the trial court's refusal to appoint counsel for him denied him rights "guaranteed by the Constitution and the Bill of Rights by the United States Government." [1] Treating the petition for habeas corpus as properly before it, the State Supreme Court, "upon consideration thereof" but without an opinion, denied all relief. Since 1942, when *Betts* v. *Brady,* 316 U. S. 455, was decided by a divided

---

[1] Later in the petition for habeas corpus, signed and apparently prepared by petitioner himself, he stated, "I, Clarence Earl Gideon, claim that I was denied the rights of the 4th, 5th and 14th amendments of the Bill of Rights."

Court, the problem of a defendant's federal constitutional right to counsel in a state court has been a continuing source of controversy and litigation in both state and federal courts.[2] To give this problem another review here, we granted certiorari. 370 U. S. 908. Since Gideon was proceeding *in forma pauperis,* we appointed counsel to represent him and requested both sides to discuss in their briefs and oral arguments the following: "Should this Court's holding in *Betts* v. *Brady,* 316 U. S. 455, be reconsidered?"

## I.

The facts upon which Betts claimed that he had been unconstitutionally denied the right to have counsel appointed to assist him are strikingly like the facts upon which Gideon here bases his federal constitutional claim. Betts was indicted for robbery in a Maryland state court. On arraignment, he told the trial judge of his lack of funds to hire a lawyer and asked the court to appoint one for him. Betts was advised that it was not the practice in that county to appoint counsel for indigent defendants except in murder and rape cases. He then pleaded not guilty, had witnesses summoned, cross-examined the State's witnesses, examined his own, and chose not to testify himself. He was found guilty by the judge, sitting without a jury, and sentenced to eight years in prison.

---

[2] Of the many such cases to reach this Court, recent examples are *Carnley* v. *Cochran,* 369 U. S. 506 (1962); *Hudson* v. *North Carolina,* 363 U. S. 697 (1960); *Moore* v. *Michigan,* 355 U. S. 155 (1957). Illustrative cases in the state courts are *Artrip* v. *State,* 136 So. 2d 574 (Ct. App. Ala. 1962); *Shaffer* v. *Warden,* 211 Md. 635, 126 A. 2d 573 (1956). For examples of commentary, see Allen, The Supreme Court, Federalism, and State Systems of Criminal Justice, 8 De Paul L. Rev. 213 (1959); Kamisar, The Right to Counsel and the Fourteenth Amendment: A Dialogue on "The Most Pervasive Right" of an Accused, 30 U. of Chi. L. Rev. 1 (1962); The Right to Counsel, 45 Minn. L. Rev. 693 (1961).

Like Gideon, Betts sought release by habeas corpus, alleging that he had been denied the right to assistance of counsel in violation of the Fourteenth Amendment. Betts was denied any relief, and on review this Court affirmed. It was held that a refusal to appoint counsel for an indigent defendant charged with a felony did not necessarily violate the Due Process Clause of the Fourteenth Amendment, which for reasons given the Court deemed to be the only applicable federal constitutional provision. The Court said:

> "Asserted denial [of due process] is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." 316 U. S., at 462.

Treating due process as "a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights," the Court held that refusal to appoint counsel under the particular facts and circumstances in the *Betts* case was not so "offensive to the common and fundamental ideas of fairness" as to amount to a denial of due process. Since the facts and circumstances of the two cases are so nearly indistinguishable, we think the *Betts* v. *Brady* holding if left standing would require us to reject Gideon's claim that the Constitution guarantees him the assistance of counsel. Upon full reconsideration we conclude that *Betts* v. *Brady* should be overruled.

## II.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." We have con-

strued this to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived.[3] Betts argued that this right is extended to indigent defendants in state courts by the Fourteenth Amendment. In response the Court stated that, while the Sixth Amendment laid down "no rule for the conduct of the States, the question recurs whether the constraint laid by the Amendment upon the national courts expresses a rule so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment." 316 U. S., at 465. In order to decide whether the Sixth Amendment's guarantee of counsel is of this fundamental nature, the Court in *Betts* set out and considered "[r]elevant data on the subject . . . afforded by constitutional and statutory provisions subsisting in the colonies and the States prior to the inclusion of the Bill of Rights in the national Constitution, and in the constitutional, legislative, and judicial history of the States to the present date." 316 U. S., at 465. On the basis of this historical data the Court concluded that "appointment of counsel is not a fundamental right, essential to a fair trial." 316 U. S., at 471. It was for this reason the *Betts* Court refused to accept the contention that the Sixth Amendment's guarantee of counsel for indigent federal defendants was extended to or, in the words of that Court, "made obligatory upon the States by the Fourteenth Amendment." Plainly, had the Court concluded that appointment of counsel for an indigent criminal defendant was "a fundamental right, essential to a fair trial," it would have held that the Fourteenth Amendment requires appointment of counsel in a state court, just as the Sixth Amendment requires in a federal court.

---

[3] *Johnson* v. *Zerbst*, 304 U. S. 458 (1938).

We think the Court in *Betts* had ample precedent for acknowledging that those guarantees of the Bill of Rights which are fundamental safeguards of liberty immune from federal abridgment are equally protected against state invasion by the Due Process Clause of the Fourteenth Amendment. This same principle was recognized, explained, and applied in *Powell* v. *Alabama,* 287 U. S. 45 (1932), a case upholding the right of counsel, where the Court held that despite sweeping language to the contrary in *Hurtado* v. *California,* 110 U. S. 516 (1884), the Fourteenth Amendment "embraced" those " 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions,' " even though they had been "specifically dealt with in another part of the federal Constitution." 287 U. S., at 67. In many cases other than *Powell* and *Betts,* this Court has looked to the fundamental nature of original Bill of Rights guarantees to decide whether the Fourteenth Amendment makes them obligatory on the States. Explicitly recognized to be of this "fundamental nature" and therefore made immune from state invasion by the Fourteenth, or some part of it, are the First Amendment's freedoms of speech, press, religion, assembly, association, and petition for redress of grievances.[4] For the same reason, though not always in precisely the same terminology, the Court has made obligatory on the States the Fifth Amendment's command that

---

[4] *E. g., Gitlow* v. *New York,* 268 U. S. 652, 666 (1925) (speech and press); *Lovell* v. *City of Griffin,* 303 U. S. 444, 450 (1938) (speech and press); *Staub* v. *City of Baxley,* 355 U. S. 313, 321 (1958) (speech); *Grosjean* v. *American Press Co.,* 297 U. S. 233, 244 (1936) (press); *Cantwell* v. *Connecticut,* 310 U. S. 296, 303 (1940) (religion); *De Jonge* v. *Oregon,* 299 U. S. 353, 364 (1937) (assembly); *Shelton* v. *Tucker,* 364 U. S. 479, 486, 488 (1960) (association); *Louisiana ex rel. Gremillion* v. *NAACP,* 366 U. S. 293, 296 (1961) (association); *Edwards* v. *South Carolina,* 372 U. S. 229 (1963) (speech, assembly, petition for redress of grievances).

private property shall not be taken for public use without just compensation,[5] the Fourth Amendment's prohibition of unreasonable searches and seizures,[6] and the Eighth's ban on cruel and unusual punishment.[7] On the other hand, this Court in *Palko* v. *Connecticut,* 302 U. S. 319 (1937), refused to hold that the Fourteenth Amendment made the double jeopardy provision of the Fifth Amendment obligatory on the States. In so refusing, however, the Court, speaking through Mr. Justice Cardozo, was careful to emphasize that "immunities that are valid as against the federal government by force of the specific pledges of particular amendments have been found to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, become valid as against the states" and that guarantees "in their origin . . . effective against the federal government alone" had by prior cases "been taken over from the earlier articles of the federal bill of rights and brought within the Fourteenth Amendment by a process of absorption." 302 U. S., at 324–325, 326.

We accept *Betts* v. *Brady*'s assumption, based as it was on our prior cases, that a provision of the Bill of Rights which is "fundamental and essential to a fair trial" is made obligatory upon the States by the Fourteenth Amendment. We think the Court in *Betts* was wrong, however, in concluding that the Sixth Amendment's guarantee of counsel is not one of these fundamental rights. Ten years before *Betts* v. *Brady,* this Court, after full consideration of all the historical data examined in *Betts,* had unequivocally declared that "the right to the aid of

[5] *E. g., Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 235–241 (1897); *Smyth* v. *Ames,* 169 U. S. 466, 522–526 (1898).

[6] *E. g., Wolf* v. *Colorado,* 338 U. S. 25, 27–28 (1949); *Elkins* v. *United States,* 364 U. S. 206, 213 (1960); *Mapp* v. *Ohio,* 367 U. S. 643, 655 (1961).

[7] *Robinson* v. *California,* 370 U. S. 660, 666 (1962).

counsel is of this fundamental character." *Powell* v. *Alabama*, 287 U. S. 45, 68 (1932). While the Court at the close of its *Powell* opinion did by its language, as this Court frequently does, limit its holding to the particular facts and circumstances of that case, its conclusions about the fundamental nature of the right to counsel are unmistakable. Several years later, in 1936, the Court reemphasized what it had said about the fundamental nature of the right to counsel in this language:

> "We concluded that certain fundamental rights, safeguarded by the first eight amendments against federal action, were also safeguarded against state action by the due process of law clause of the Fourteenth Amendment, and among them the fundamental right of the accused to the aid of counsel in a criminal prosecution." *Grosjean* v. *American Press Co.*, 297 U. S. 233, 243–244 (1936).

And again in 1938 this Court said:

> "[The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . . . The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' " *Johnson* v. *Zerbst*, 304 U. S. 458, 462 (1938). To the same effect, see *Avery* v. *Alabama*, 308 U. S. 444 (1940), and *Smith* v. *O'Grady*, 312 U. S. 329 (1941).

In light of these and many other prior decisions of this Court, it is not surprising that the *Betts* Court, when faced with the contention that "one charged with crime, who is unable to obtain counsel, must be furnished counsel by the State," conceded that "[e]xpressions in the opinions of this court lend color to the argument . . . ." 316 U. S., at 462–463. The fact is that in deciding as it did— that "appointment of counsel is not a fundamental right,

essential to a fair trial"—the Court in *Betts* v. *Brady* made an abrupt break with its own well-considered precedents. In returning to these old precedents, sounder we believe than the new, we but restore constitutional principles established to achieve a fair system of justice. Not only these precedents but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in *Powell* v. *Alabama:*

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be

heard by counsel. Even the intelligent and edu-
cated layman has small and sometimes no skill in the
science of law. If charged with crime, he is inca-
pable, generally, of determining for himself whether
the indictment is good or bad. He is unfamiliar with
the rules of evidence. Left without the aid of coun-
sel he may be put on trial without a proper charge,
and convicted upon incompetent evidence, or evi-
dence irrelevant to the issue or otherwise inadmis-
sible. He lacks both the skill and knowledge ade-
quately to prepare his defense, even though he have
a perfect one. He requires the guiding hand of
counsel at every step in the proceedings against him.
Without it, though he be not guilty, he faces the dan-
ger of conviction because he does not know how to
establish his innocence." 287 U. S., at 68–69.

The Court in *Betts* v. *Brady* departed from the sound
wisdom upon which the Court's holding in *Powell* v. *Ala-
bama* rested. Florida, supported by two other States, has
asked that *Betts* v. *Brady* be left intact. Twenty-two
States, as friends of the Court, argue that *Betts* was "an
anachronism when handed down" and that it should now
be overruled. We agree.

The judgment is reversed and the cause is remanded to
the Supreme Court of Florida for further action not
inconsistent with this opinion.

*Reversed.*

MR. JUSTICE DOUGLAS.

While I join the opinion of the Court, a brief historical
résumé of the relation between the Bill of Rights and the
first section of the Fourteenth Amendment seems perti-
nent. Since the adoption of that Amendment, ten Jus-
tices have felt that it protects from infringement by the
States the privileges, protections, and safeguards granted
by the Bill of Rights.

Justice Field, the first Justice Harlan, and probably Justice Brewer, took that position in *O'Neil* v. *Vermont*, 144 U. S. 323, 362–363, 370–371, as did Justices BLACK, DOUGLAS, Murphy and Rutledge in *Adamson* v. *California*, 332 U. S. 46, 71–72, 124. And see *Poe* v. *Ullman*, 367 U. S. 497, 515–522 (dissenting opinion). That view was also expressed by Justices Bradley and Swayne in the *Slaughter-House Cases*, 16 Wall. 36, 118–119, 122, and seemingly was accepted by Justice Clifford when he dissented with Justice Field in *Walker* v. *Sauvinet*, 92 U. S. 90, 92.[1] Unfortunately it has never commanded a Court. Yet, happily, all constitutional questions are always open. *Erie R. Co.* v. *Tompkins*, 304 U. S. 64. And what we do today does not foreclose the matter.

My Brother HARLAN is of the view that a guarantee of the Bill of Rights that is made applicable to the States by reason of the Fourteenth Amendment is a lesser version of that same guarantee as applied to the Federal Government.[2] Mr. Justice Jackson shared that view.[3]

---

[1] Justices Bradley, Swayne and Field emphasized that the first eight Amendments granted citizens of the United States certain privileges and immunities that were protected from abridgment by the States by the Fourteenth Amendment. See *Slaughter-House Cases, supra,* at 118–119; *O'Neil* v. *Vermont, supra,* at 363. Justices Harlan and Brewer accepted the same theory in the *O'Neil* case (see *id.*, at 370–371), though Justice Harlan indicated that all "persons," not merely "citizens," were given this protection. *Ibid.* In *Twining* v. *New Jersey,* 211 U. S. 78, 117, Justice Harlan's position was made clear:

"In my judgment, immunity from self-incrimination is protected against hostile state action, not only by . . . . [the Privileges and Immunities Clause], but [also] by . . . [the Due Process Clause]."

Justice Brewer, in joining the opinion of the Court, abandoned the view that the entire Bill of Rights applies to the States in *Maxwell* v. *Dow,* 176 U. S. 581.

[2] See *Roth* v. *United States,* 354 U. S. 476, 501, 506; *Smith* v. *California,* 361 U. S. 147, 169.

[3] *Beauharnais* v. *Illinois,* 343 U. S. 250, 288. Cf. the opinions of Justices Holmes and Brandeis in *Gitlow* v. *New York,* 268 U. S. 652, 672, and *Whitney* v. *California,* 274 U. S. 357, 372.

But that view has not prevailed [4] and rights protected against state invasion by the Due Process Clause of the Fourteenth Amendment are not watered-down versions of what the Bill of Rights guarantees.

Mr. Justice Clark, concurring in the result.

In *Bute* v. *Illinois,* 333 U. S. 640 (1948), this Court found no special circumstances requiring the appointment of counsel but stated that "if these charges had been capital charges, the court would have been required, both by the state statute and the decisions of this Court interpreting the Fourteenth Amendment, to take some such steps." *Id.,* at 674. Prior to that case I find no language in any cases in this Court indicating that appointment of counsel in all capital cases was required by the Fourteenth Amendment.[1] At the next Term of the Court Mr. Justice Reed revealed that the Court was divided as to noncapital cases but that "the due process clause . . . requires counsel for all persons charged with serious crimes . . . ." *Uveges* v. *Pennsylvania,* 335 U. S. 437, 441 (1948). Finally, in *Hamilton* v. *Alabama,* 368 U. S. 52 (1961), we said that "[w]hen one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice resulted." *Id.,* at 55.

---

[4] The cases are collected by Mr. Justice Black in *Speiser* v. *Randall,* 357 U. S. 513, 530. And see, *Eaton* v. *Price,* 364 U. S. 263, 274–276.

[1] It might, however, be said that there is such an implication in *Avery* v. *Alabama,* 308 U. S. 444 (1940), a capital case in which counsel had been appointed but in which the petitioner claimed a denial of "effective" assistance. The Court in affirming noted that "[h]ad petitioner been denied any representation of counsel at all, such a clear violation of the Fourteenth Amendment's guarantee of asssistance of counsel would have required reversal of his conviction." *Id.,* at 445. No "special circumstances" were recited by the Court, but in citing *Powell* v. *Alabama,* 287 U. S. 45 (1932), as authority for its dictum it appears that the Court did not rely solely on the capital nature of the offense.

That the Sixth Amendment requires appointment of counsel in "all criminal prosecutions" is clear, both from the language of the Amendment and from this Court's interpretation. See *Johnson* v. *Zerbst,* 304 U. S. 458 (1938). It is equally clear from the above cases, all decided after *Betts* v. *Brady,* 316 U. S. 455 (1942), that the Fourteenth Amendment requires such appointment in all prosecutions for capital crimes. The Court's decision today, then, does no more than erase a distinction which has no basis in logic and an increasingly eroded basis in authority. In *Kinsella* v. *United States ex rel. Singleton,* 361 U. S. 234 (1960), we specifically rejected any constitutional distinction between capital and noncapital offenses as regards congressional power to provide for court-martial trials of civilian dependents of armed forces personnel. Having previously held that civilian dependents could not constitutionally be deprived of the protections of Article III and the Fifth and Sixth Amendments in capital cases, *Reid* v. *Covert,* 354 U. S. 1 (1957), we held that the same result must follow in noncapital cases. Indeed, our opinion there foreshadowed the decision today,[2] as we noted that:

> "Obviously Fourteenth Amendment cases dealing with state action have no application here, but if

---

[2] Portents of today's decision may be found as well in *Griffin* v. *Illinois,* 351 U. S. 12 (1956), and *Ferguson* v. *Georgia,* 365 U. S. 570 (1961). In *Griffin,* a noncapital case, we held that the petitioner's constitutional rights were violated by the State's procedure, which provided free transcripts for indigent defendants only in capital cases. In *Ferguson* we struck down a state practice denying the appellant the effective assistance of counsel, cautioning that "[o]ur decision does not turn on the facts that the appellant was tried for a capital offense and was represented by employed counsel. The command of the Fourteenth Amendment also applies in the case of an accused tried for a noncapital offense, or represented by appointed counsel." 365 U. S., at 596.

they did, we believe that to deprive civilian dependents of the safeguards of a jury trial here . . . would be as invalid under those cases as it would be in cases of a capital nature." 361 U. S., at 246–247.

I must conclude here, as in *Kinsella, supra,* that the Constitution makes no distinction between capital and noncapital cases. The Fourteenth Amendment requires due process of law for the deprival of "liberty" just as for deprival of "life," and there cannot constitutionally be a difference in the quality of the process based merely upon a supposed difference in the sanction involved. How can the Fourteenth Amendment tolerate a procedure which it condemns in capital cases on the ground that deprival of liberty may be less onerous than deprival of life—a value judgment not universally accepted [3]—or that only the latter deprival is irrevocable? I can find no acceptable rationalization for such a result, and I therefore concur in the judgment of the Court.

Mr. Justice Harlan, concurring.

I agree that *Betts* v. *Brady* should be overruled, but consider it entitled to a more respectful burial than has been accorded, at least on the part of those of us who were not on the Court when that case was decided.

I cannot subscribe to the view that *Betts* v. *Brady* represented "an abrupt break with its own well-considered precedents." *Ante,* p. 344. In 1932, in *Powell* v. *Alabama,* 287 U. S. 45, a capital case, this Court declared that under the particular facts there presented—"the ignorance and illiteracy of the defendants, their youth, the circumstances of public hostility . . . and above all that they stood in deadly peril of their lives" (287 U. S., at 71)—the state court had a duty to assign counsel for

---

[3] See, *e. g.,* Barzun, In Favor of Capital Punishment, 31 American Scholar 181, 188–189 (1962).

the trial as a necessary requisite of due process of law. It is evident that these limiting facts were not added to the opinion as an afterthought; they were repeatedly emphasized, see 287 U. S., at 52, 57–58, 71, and were clearly regarded as important to the result.

Thus when this Court, a decade later, decided *Betts* v. *Brady,* it did no more than to admit of the possible existence of special circumstances in noncapital as well as capital trials, while at the same time insisting that such circumstances be shown in order to establish a denial of due process. The right to appointed counsel had been recognized as being considerably broader in federal prosecutions, see *Johnson* v. *Zerbst,* 304 U. S. 458, but to have imposed these requirements on the States would indeed have been "an abrupt break" with the almost immediate past. The declaration that the right to appointed counsel in state prosecutions, as established in *Powell* v. *Alabama,* was not limited to capital cases was in truth not a departure from, but an extension of, existing precedent.

The principles declared in *Powell* and in *Betts,* however, have had a troubled journey throughout the years that have followed first the one case and then the other. Even by the time of the *Betts* decision, dictum in at least one of the Court's opinions had indicated that there was an absolute right to the services of counsel in the trial of state capital cases.[1] Such dicta continued to appear in subsequent decisions,[2] and any lingering doubts were finally eliminated by the holding of *Hamilton* v. *Alabama,* 368 U. S. 52.

In noncapital cases, the "special circumstances" rule has continued to exist in form while its substance has been substantially and steadily eroded. In the first decade after *Betts,* there were cases in which the Court

---

[1] *Avery* v. *Alabama,* 308 U. S. 444, 445.

[2] *E. g., Bute* v. *Illinois,* 333 U. S. 640, 674; *Uveges* v. *Pennsylvania,* 335 U. S. 437, 441.

found special circumstances to be lacking, but usually by a sharply divided vote.[3]   However, no such decision has been cited to us, and I have found none, after *Quicksall* v. *Michigan,* 339 U. S. 660, decided in 1950.   At the same time, there have been not a few cases in which special circumstances were found in little or nothing more than the "complexity" of the legal questions presented, although those questions were often of only routine difficulty.[4] The Court has come to recognize, in other words, that the mere existence of a serious criminal charge constituted in itself special circumstances requiring the services of counsel at trial.   In truth the *Betts* v. *Brady* rule is no longer a reality.

This evolution, however, appears not to have been fully recognized by many state courts, in this instance charged with the front-line responsibility for the enforcement of constitutional rights.[5]   To continue a rule which is honored by this Court only with lip service is not a healthy thing and in the long run will do disservice to the federal system.

The special circumstances rule has been formally abandoned in capital cases, and the time has now come when it should be similarly abandoned in noncapital cases, at least as to offenses which, as the one involved here, carry the possibility of a substantial prison sentence. (Whether the rule should extend to *all* criminal cases need not now be decided.)   This indeed does no more than to make explicit something that has long since been foreshadowed in our decisions.

---

[3] *E. g., Foster* v. *Illinois,* 332 U. S. 134; *Bute* v. *Illinois,* 333 U. S. 640; *Gryger* v. *Burke,* 334 U. S. 728.

[4] *E. g., Williams* v. *Kaiser,* 323 U. S. 471; *Hudson* v. *North Carolina,* 363 U. S. 697; *Chewning* v. *Cunningham,* 368 U. S. 443.

[5] See, *e. g., Commonwealth ex rel. Simon* v. *Maroney,* 405 Pa. 562, 176 A. 2d 94 (1961); *Shaffer* v. *Warden,* 211 Md. 635, 126 A. 2d 573 (1956); *Henderson* v. *Bannan,* 256 F. 2d 363 (C. A. 6th Cir. 1958).

In agreeing with the Court that the right to counsel in a case such as this should now be expressly recognized as a fundamental right embraced in the Fourteenth Amendment, I wish to make a further observation. . When we hold a right or immunity, valid against the Federal Government, to be "implicit in the concept of ordered liberty" [6] and thus valid against the States, I do not read our past decisions to suggest that by so holding, we automatically carry over an entire body of federal law and apply it in full sweep to the States. Any such concept would disregard the frequently wide disparity between the legitimate interests of the States and of the Federal Government, the divergent problems that they face, and the significantly different consequences of their actions. Cf. *Roth* v. *United States,* 354 U. S. 476, 496–508 (separate opinion of this writer). In what is done today I do not understand the Court to depart from the principles laid down in *Palko* v. *Connecticut,* 302 U. S. 319, or to embrace the concept that the Fourteenth Amendment "incorporates" the Sixth Amendment as such.

On these premises I join in the judgment of the Court.

---

[6] *Palko* v. *Connecticut,* 302 U. S. 319, 325.