**Gerald RITCHIE, Petitioner,**

v.

**STATE OF NORTH CAROLINA, Respondent.**

**Misc. No. 32.**

United States District Court
W. D. North Carolina,
Asheville Division.

Argued Aug. 23, 1963.

Decided Aug. 29, 1963.

G. Edison Hill, Williams, Williams & Morris, Asheville, N. C., for petitioner.

Theadore C. Brown, Jr., Staff Atty., Office of Atty. Gen. of North Carolina, Raleigh, N. C., for respondent.

CRAVEN, Chief Judge.

This proceeding arises upon a letter written June 23, 1963, by the petitioner Gerald Ritchie to the Chief Judge of the United States Court of Appeals for the Fourth Circuit, which letter is treated by this court, pursuant to the direction of Chief Judge Simon E. Sobeloff, as a petition for writ of habeas corpus. It is referred to this court under 28 U.S.C.A. § 2241(b).

The undersigned United States District Judge thereupon caused the Honorable Edison Hill to be appointed as counsel for Gerald Ritchie to prosecute the writ. Mr. Hill enlarged upon the allegations charged in the original letter from the petitioner so as to allege, in substance, three alleged violations of the petitioner's constitutional rights:

"1. That although the superior court appointed counsel for the prisoner, he was not allowed sufficient time within which to prepare the case so that the appointment was inadequate.

"2. That the State failed to present sufficient evidence to justify a conviction and sentence.

"3. That the entry of the plea of nolo contendere was not authorized by petitioner, but, instead, he had instructed his counsel to plead 'not guilty'."

This court conducted a plenary evidentiary hearing at Asheville on Tuesday, August 20, 1963, and permitted the prisoner to be brought to the hearing and participate therein.

Without objection from the petitioner, his court-appointed counsel in the superior court, the Honorable Robert L. Harrell, was sworn and testified, tending to show that he had carefully explained the effect of a plea of nolo contendere to Gerald Ritchie; that he told him it was *not* a "not guilty" plea but meant that the prisoner would not contest with the State as to his guilt. This is a reasonably accurate statement of the effect

and meaning of such a plea under North Carolina criminal law. The plea of nolo contendere is itself *alone* sufficient to support judgment and sentence. There is no necessity for the taking of any evidence whatsoever. See: Lott v. U. S., 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940, (1961). Even so, a practice has grown up and come into common usage in North Carolina, which is that the Solicitor and counsel for a prisoner agree informally that they will permit the superior court judge to hear the evidence, and if, in his opinion, it is insufficient to justify judgment and sentence and he so indicates, then the prisoner will be permitted to withdraw his nolo contendere plea and the State will enter a nol pros. This practice arises largely from necessity. Under North Carolina law, a person charged with crime, absurdly enough, cannot waive jury trial. The court has no power to try him without a jury even upon his specific request. The foregoing clumsy device has, therefore, become a rather general practice in an effort by both State and prisoner to avoid a protracted and unnecessary jury trial which neither side wants. Whatever its faults, it has the sanction of usage in North Carolina.

■ One may speculate (there was no evidence indicating it) that Ritchie fed his hope on the supposition that the presiding judge might feel dissatisfied with the evidence and permit a withdrawal of the plea of nolo contendere with the resultant nol pros. Yet, the record clearly discloses that Ritchie was experienced in the criminal courts and had a fully competent lawyer familiar with this peculiar North Carolina practice, who advised him fully and correctly that the plea of nolo contendere, for all practical purposes, is the same as a guilty plea and itself supports judgment and sentence. The court finds as a fact that Gerald Ritchie knew and understood the nature and purpose of the plea of nolo contendere and knew that it would support judgment and sentence and authorized his counsel to enter such a plea.

■ More difficult is the allegation that Ritchie's court-appointed counsel had insufficient time to prepare for trial and to properly evaluate the case and advise his client as to what his plea ought to be. The record itself is silent as to the date of the trial. Oral testimony indicates Ritchie's case was called about noon on Tuesday, March 19, 1963. It can reasonably be inferred that counsel was appointed for him as a direct result of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which decision was handed down on Monday, March 18. Mr. Harrell testified tending to show that he was appointed twenty-five hours before the case was called for trial. The petitioner testified tending to show that his court-appointed counsel conferred with him only a very few hours, perhaps two or three, before the actual call of the case. Yet, the fact remains that no motion for a continuance was made to the court, nor did Ritchie request his counsel to lodge such a motion. The court is impressed with the testimony of Mr. Harrell that he took his duty very seriously and considered it a matter of conscience to give to the petitioner as good and faithful service as if he were employed and paid a substantial fee. Harrell made careful inquiry for eyewitnesses who might testify favorably to the petitioner, and, discovering none, reached a judgment which now, even with hindsight, cannot be said to have been erroneous. Ritchie and his appointed counsel happen to be Americans of the same ethnic origin and background—an irrelevancy perhaps—but reassuring to some who suspect fidelity on any higher plane. Considering all the facts and circumstances, and giving no special weight to the long criminal record of the defendant with respect to similar crimes, except as such a record would make it unwise for him to testify in his own defense, the court is of the opinion that adequate counsel was furnished the petitioner in the superior court of North Carolina sufficient to comply with the constitutional mandate of Gideon v.

Wainwright, supra. Needless to say, any judgment is suspect when the lapse of time between the appointment of counsel and entry of plea and sentence is so short. Obviously fifteen days is much better than fifteen minutes. But the law is not such an exact science that any given number of hours or days can be said to be requisite. The court finds as a fact that Ritchie's counsel was accorded sufficient time to assemble and evaluate the relevant facts, advise his client as to the law, and determine upon the best plea to be entered by Ritchie. The State of North Carolina was confronted with a new interpretation of an old requirement, and, in the opinion of this court, acted in good faith and sufficiently discharged its obligation.

Finally, it is doubtful whether or not this court presently has jurisdiction to consider this petition on the merits. See: Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Although Ritchie says he addressed a letter to the Honorable Harry Martin, special judge of the superior court, asking for a post-conviction hearing, it appears such a request is insufficient under North Carolina procedural law.. Although special judges of North Carolina have general jurisdiction, such special judges have no general administrative or supervisory duties except in the county where they are then assigned to hold court. See:. Spaugh v. City of Charlotte, 239 N.C. 149, 79 S.E. 2d 748. The Post-Conviction Hearing Act spells out the method of procedure, and the court is advised by counsel for the State of North Carolina that each prisoner is carefully advised that the application must be made to the clerk of superior court—which was not done in this case. N.C.G.S. § 15–217. And it appears the remedy is still available. See: Fay v. Noia, supra.

Assuming, without deciding, that this court has jurisdiction to hear the petition, it is adjudged that Ritchie has shown no sufficient grounds for relief, and his petition is denied, and he is remanded into the custody of the authorities of the State of North Carolina.