603 A.2d 1001

STATE OF NEW JERSEY, PLAINTIFF, v. FRANCISCO FALCONE, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided January 8, 1992.

*Leslie Branch,* Assistant Essex County Prosecutor, for Plaintiff.

*Paul N. Mirabelli,* for Defendant.

GILES, J.S.C.

## I. PROCEDURAL HISTORY

Defendant, Francisco Falcone, appealed his convictions in Municipal Court pursuant to *R.* 3:23–8 of operating a vehicle while his license was suspended, *N.J.S.A.* 39:3–40; failure to exhibit a driver's license, *N.J.S.A.* 39:3–29 (merged for purposes of sentencing) and parking in a "no parking" area, *N.J.S.A.* 39:4–138. The court sentenced the defendant as follows: Remanded to county jail ten (10) days, a fine of one thousand dollars ($1,000) and, a "further" or consecutive suspension of his driver's license for one (1) year, consecutive to a prior suspension. Defendant appeared *pro se* in the Municipal Court and presented his case through a court assigned Spanish–English interpreter.

There was no prosecutor below, and the state's case was presented through one witness, a Port of Authority of New York and New Jersey police officer. On this appeal, the defendant filed two memoranda of law through counsel. The State filed no memorandum or brief.

## II. DECISION

Pursuant to *R.* 3:23–8(a), this court reviewed the transcript of the hearing below, reviewed the submissions of counsel and, conducted a hearing to allow counsel the opportunity to supplement the record.

After this court's review and consideration of the transcript, and of the submissions and arguments of counsel; pursuant to *R.* 3:23–8(a), I find that the rights of the defendant were prejudiced below and I reverse and remand the matter for disposition consistent with the reasons for remand set out in the opinion that follows.

## III. FACTS

Before the presentation of testimony, relevant facts summarized as follows appear from the record: When the case was

initially called, Alexandro Falcone, the son of the defendant, Francisco Falcone, (hereinafter referred to as son) (T 1/9–10), claimed that he (the son) was driving the car at the time of the incidents in question. T 1/22–23; T 2/1–3

The son also advised the court that the defendant did not speak English (T 2/9–13), whereupon the court called for an interpreter. When the interpreter arrived, the court instructed him to inform the defendant of the charges, and a brief colloquy about the defendant waiving his right to counsel appears. T 2/19–T 3/5

The court then proceeded to take pleas to three charges in an exchange that is unclear and, in some instances, contradictory. T 3/6–24.

It is noted, that while reference is made in the record to three charges, no record appears of precisely what statutory violations are involved.

This court infers from the record that *N.J.S.A.* 39:3–40; *N.J.S.A.* 39:3–29; and *N.J.S.A.* 39:4–138 are the charges that pertain.

The record (T 4/15–16) indicates that summons numbers I–1877956 and 1877958 were issued, however, there is no indication of how these two summonses addressed the three charges involved.

The file provided to this court contained summons Number I–1877958, charging a violation of *N.J.S.A.* 39:3–40, driving while license revoked, and no other summons.

The State's case consisted of the testimony of one witness, Port Authority Police Officer William Rowan.

Officer Rowan testified that he issued three summonses, including the two noted summonses, 956 and 958, on October 9, 1990 at 1:55 a.m. after he had observed a brown Cadillac, registration N.J. ENV50Y pull in and park illegally in front of Terminal C (Newark International Airport). This observation

was made from approximately 150 feet away while he was driving his unmarked police car. T 4/15–T 5/3

Rowan identified the driver as "a short individual whose face (he) did not see" exit the vehicle and enter the terminal. T 5/3–4

He said he observed no other vehicles parked in front of the terminal at that hour (1:55 a.m.). T 5/4–6

As a result of making these observations Rowan said he "positioned (his) patrol car next to the vehicle", (T 5/6) and after waiting for about 20 minutes the defendant, Francisco Falcone, exited the terminal and approached the Cadillac. When the officer asked the defendant for his driver's license, registration and insurance (card), the defendant stated that his son had driven and parked the vehicle but had left the airport and was in Elizabeth. T 5/6–12

Rowan indicated that the defendant produced keys to the car after being asked again for "paperwork" and entered the car and produced the registration and insurance (card). Rowan said that the defendant could not produce a driver's license and a motor vehicle check revealed a "suspended license" and summonses were issued. (T 5/13–18) The court then directed a series of questions to the officer which, in part, suggested that the person who exited the terminal twenty minutes after the officer pulled up to the car was the same person initially observed leaving the car. T 5/9–20

The defendant then requested permission of the court to ask one question and, in fact asked two. (T 6/25–T 7/10) The significantly dispositive question:

"are you sure that it was me exiting the vehicle because it was my son driving the automobile?"

(T 7/9–10) was not answered.

There was no question, or indication of how Officer Rowan communicated with the defendant at the scene. After the defendant asked three more questions and indicated that he wished to make a statement, the court closed the State's case.

The defendant was then sworn and testified that his son drove the automobile to the airport, with the defendant as a passenger, to pick up a friend.

He stated that it was raining heavily and that both men went inside to look for the friend. Upon their return to the car, they found that it could not be started. The defendant stated that his son then went to another terminal to get a friend to assist them. The defendant then went into Terminal C to use the telephone to call for help.

Defendant stated that when he saw the police officer had pulled next to his vehicle he went out to explain the problem.

He stated that he told the officer that his license was suspended (T 9/5) and tried to explain about his son and the car problem. He was issued three summonses.

After the officer declined to cross-examine, he offered the defendant's driving abstract as evidence, (T 9/23) even though the State's case was over.

There was a second colloquy at this point concerning the defendant's ability to speak English, where the defendant stated that he "understood a little bit but that it was hard for him to speak the language". T 10/1–4

The defendant then referred to a potential witness, a taxi cab driver who, based upon subsequent testimony, would have been vital to the defense. T 10/7–9

The court passing over that event, allowed the son, Alexandro Falcone to testify.

The son substantially corroborated the defendant's testimony except that he added crucial information that he was employed as a taxi driver at Terminal A and went there on that night to bring a friend with a taxi to help restart their car. The son stated that he drove to the airport and parked. T 10/25–T 11/3

No cross examination was conducted by the officer or the court.

The court then proceeded to render its findings.  T 11/14–T 13/5

## IV.  STATEMENT OF THE LAW

■  Before reaching the significant and substantial number of questions raised on this record in the course of the "trial" and, in the court's sentence, it is necessary to address the preliminary gross denial of fundamental due process which occurred before a word of testimony was uttered.

Before the court below stood a defendant who clearly had, at best, a limited facility in his use of the English language.

After an interpreter was called, defendant was required or permitted to "waive" Counsel and proceed *pro se* to try his case in the face of the possibility, if convicted, of facing substantial fines, loss of his driving privileges and incarceration.

It is, parenthetically, a plain travesty that the defendant in this case, in addition to being fined $1,000.00 and having his license suspended for one year, over and above any current suspension, was incarcerated for ten days.

If that travesty could be compounded, it was where the Court below, in one instance, when sentencing the defendant under *N.J.S.A.* 39:3–40, sentenced him beyond the allowable maximum of six months, to a patently erroneous consecutive one year suspension.

■  It is beyond this court's understanding how the court below not only allowed the case to proceed under the circumstances, but failed to recognize at the outset that basic fundamental legal and constitutional principles were being overlooked.

The importance of counsel in an accusatorial system ... is well recognized.  *Rodriguez v. Rosenblatt* 58 *N.J.* 281, 295, 277 *A.*2d 216 (1971)

New Jersey has since very early times given strong recognition to the criminal defendant's right to counsel.  58 *N.J.* at

285, 287, 277 *A*.2d 216. From the very beginning our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. *Gideon v. Wainwright,* 372 *U.S.* 335 at 344, 83 *S.Ct.* 792 at 796, 9 *L.Ed.*2d 799 at 805. In *State v. Abbondanzo,* 201 *N.J.Super.* 181, 184, 492 *A.*2d 1077 (App. Div.1985) the Court determined that no detailed review of the evidence or facts was required when a review of the record disclosed that the defendant did not *knowingly* and *intelligently* waive his Sixth Amendment right to counsel at the trial before the municipal court.

The court also noted that a "searching and painstaking inquiry must be made by a trial judge before he can conclude that there has been an intelligent and competent waiver of counsel." *Id.*

It is noteworthy that in the instant case, not only does the record not reflect any such waiver by the defendant, but in addition to, and in the face of the language disability, no explanation is offered on the record of how the defendant's purported signature after the stamped words:

"I have been advised by the Judge that I may have a lawyer appointed to represent me if I have no money. I do not want to have a lawyer represent me, but wish to proceed with my case now."

which appear on the back of summons 985, in English, was obtained.

It is of further import in this regard, that the court below, in view of *R.* 3:9-2 and *R.* 7:4-2(b), even accepted pleas in the case. The record is devoid of any advice to the defendant of any possible exposure prior to the contradictory and inconsistent pleas accepted here. T 3/6-24

Where an intelligent and competent waiver of counsel does not appear of record and the defendant was not advised of "the consequences of the pleas", convictions cannot stand.

*Abbondanzo, supra.;* see *e.g. State v. Fusco,* 93 *N.J.* 578, 591, 461 *A.*2d 1169 (1983).

■ Even though, this case warrants reversal without further review, the error *after* the procedural lapses is⋄significant and must be addressed, lest repeated.

In the absence of counsel, both for the state and defense, as in this case, it seems to this court that the guidelines for the trial judge set out in *Rodriguez* and its progeny, both federal and state, bear close scrutiny.

The court is required to act as prosecutor and defense counsel.

The court below appeared not to appreciate its responsibility in this regard.

The court should have recognized and tested by cross examination, the State's failure to establish a positive identification of the person initially observed driving the car.

The record reflects that the State's witness indicated that he did not see the face of the driver, T 5/3–4, yet the court did not allow the defendant to or, itself pursue that crucial question when it was asked by the defendant on cross examination.  T 7/9–10

Instead, the Court in its decision inexplicably states:

"his testimony was that he saw one person leave and he admitted that the face, that he did not see the face of this person, he could not recognize this person...."  T 11/19–21

and again;

"and based upon the officer's observation that this person who was short and apparently resembled Mr. Falcone left the vehicle, later to emerge with the keys ..."  T 12/13–16

These statements, which fly directly in the face of the basic and fundamental principle of reasonable doubt, also inappropriately conclude that the unidentified person was the defendant.

While the record indicates other places where error exists, in accord with *Abbondanzo* further detail is not necessary.

The judgments of conviction are reversed and the matter is remanded for disposition not inconsistent with this opinion.