EFFRON, Judge
(dissenting):
Six years ago, our Court concluded in the present case that “a factfinding hearing pursuant to United States v. DuBay, 17 USCMA 147, 37 CMR 411 (1967), is necessary (1) to fully develop the record on the issue of the news media’s refusal to comply with the federal subpoena for the videotape requested by the defense in this case, (2) to establish the availability of the videotape for production and inspection, and (3) to address the applicability, if any, of a news-gathering privilege.” United States v. Rodriguez, 50 M.J. 38 (C.A.A.F.1998)(mem.).
The initial DuBay hearing was held on November 6, 1998. Appellant was then serving a sentence that included 10 years’ confinement at hard labor. At the outset, Appellant offered to waive his right to be present at future proceedings because he feared that he would lose extra good time credit during periods that he was not physically present at the Fort Leavenworth military confinement facility. At that time, Appellant had not yet discussed the substantive matters at issue in the proceedings with his detailed military defense counsel.
Although defense counsel did not ask the military judge to address the adverse impact of attending the hearing on Appellant’s confinement status, the military judge noted that there were possible avenues of redress, including a submission to our Court. The defense, however, did not seek relief from our Court, and there is nothing in the record indicating that the defense otherwise sought to ensure that Appellant did not suffer a loss of potential good time credit by attending the court-ordered hearings.
The military judge, who expressed significant concern about conducting the hearing in Appellant’s absence, obtained an assurance from detailed defense counsel that she would “stay in communication” with Appellant and keep Appellant informed “of everything that’s being done in his case.” Before accepting Appellant’s waiver, the military judge told Appellant that he was “confident that I’ll be alert and [detailed defense counsel] will be even more alert if anything comes up that requires information from you or a consultation with you that will be done.”
During the initial session, defense counsel informed the military judge that the defense was considering a stipulation “to the fact that there’s no tape, NBC no longer has a tape” and speculated as to whether that development would moot the need for a DuBay proceeding. The military judge and the parties then discussed the possibility of submitting a motion to our Court advising us of that development with a view towards determining whether we would modify our order.
On January 25, 1999, defense counsel filed a “motion for clarification” with our Court, suggesting that the order for a DuBay hearing was moot in light of a stipulation of fact that had been agreed to by the parties. The stipulation stated that:
1. The non-broadcast videotape, including outtakes, relating to the 3 May 1991 highway stop of YN3 Rodriquez by ATF agents does not exist within NBC’s custody or control.
2. NBC’s practice regarding non-broadcast outtakes is to recycle those videotapes, unless otherwise instructed to maintain. To the best of the NBC Law Department’s knowledge, no such instruction was given.
*257 Shortly thereafter, we summarily denied the defense motion, thereby clearing the way for the DuBay hearing to proceed. United States v. Rodriguez, 51 M.J. 361 (C.A.A.F.1999).
At the second DuBay session, on May 12, 1999, Appellant was represented by the same detailed defense counsel. Pursuant to the waiver executed at the prior hearing, Appellant did not attend the second session or any subsequent session.
Although our Court had rejected defense counsel’s motion to modify the scope of our order, defense counsel nonetheless suggested to the military judge that the stipulation as to the non-existence of the videotape mooted the first prong of our order—the requirement to “fully develop[] the record on the issue of the News media’s refusal to comply with a federal subpoena for the video tape [sic] requested by the defense in this ease.” The military judge discouraged the defense from disregarding the importance of the first prong of the order, commenting: “Well, I don’t know, if the tape no longer exists and [NBC] wrongfully did not produce them [sic] and there’s prejudice presumed or shown, then the accused has a beef.” The military judge also declined to accept defense counsel’s suggestion that witness testimony was not necessary on the issue, indicating that he would give further consideration to the matter after reviewing any written submissions.
A third DuBay session was held on October 5, 1999. Appellant was not present, nor was the detailed defense counsel who had represented him at the prior proceedings. The record of the third session contains no explanation of detailed defense counsel’s absence, the circumstances surrounding it, or the fact that a different person announced his presence as defense counsel.
The record contains no reference to the fact the defense counsel was new to the proceedings; nor does the record contain any statement as to the new defense counsel’s qualifications and certification under Article 27(b), Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 827(b)(2000). The record simply sets forth l’outine statements by the military judge and counsel identifying themselves in terms of their names and the names of their clients.
The military judge did not inquire on the record as to whether the new defense counsel had been detailed properly to represent Appellant, nor did the military judge ascertain on the record whether the new counsel had established an attorney-client relationship with Appellant. The final DuBay session, held on January 7, 2000, likewise is devoid of any consideration of the new counsel’s qualifications or relationship to Appellant.
When these deficiencies in the record were identified during appellate review of the Du-Bay proceedings, the Government submitted three documents. The first is a memorandum, dated June 10, 1999, from the “Commanding Officer, Naval Legal Service Office, North Central, Washington, DC” to the “Commanding Officer, National Naval Medical Center, Bethesda.” The memorandum asks the Commanding Officer at Bethesda to notify “HN Hector Rodriguez, USN,” that a named lieutenant—the new defense counsel who appeared at the third session—had been detailed as his defense counsel, and that “the accused” should immediately contact that defense counsel.
The primary defect in the memorandum is that it directed the Commanding Officer at Bethesda to contact the wrong person—“HN Hector Rodriguez.” There is nothing in the record indicating that anyone at Bethesda contacted Appellant—YN3 Jorge L. Rodriguez. In fact, there is no indication in the record that Appellant had any relationship to Bethesda, or that the command at Bethesda had any responsibility for the provision of legal services to Appellant. It is not apparent why the task of contacting Appellant was not assigned to an officer having authority over Appellant, such as the Commanding Officer at Fort Leavenworth or the commander of the naval organization to which Appellant was assigned.
The second document submitted by the Government is an affidavit executed by the first detailed defense counsel, the contents of which underscore the inattention of Appellant’s counsel to the significance of the DuBay proceeding. After misidentifying *258 the proceeding as a “hearing ordered by the Navy-Marine Corps Court of Criminal Appeals,” the first defense counsel characterized her participation as involving “only administrative matters”—apparently overlooking her role in the waiver of Appellant’s right to be present, her persistent efforts to convince the military judge that the substantive issues raised by our Court’s order had been rendered moot, and her decision to address those issues without obtaining the live testimony of witnesses with firsthand knowledge of the creation and disposition of the videotape.
The affidavit also sheds little light on the circumstances surrounding her replacement by a second detailed defense counsel and the termination of her responsibilities to her client. The first counsel noted that she was scheduled to detach from the defense counsel office in November 1999, and that a new defense counsel “was detailed to the hearing about four months prior to my scheduled detachment____ To my understanding, this was done in order to release me of all defense related duties so that I could concentrate on managing the Legal Assistance office at the Naval Hospital in Bethesda, MD.” She also stated that upon the assignment of new counsel, “I was told by the Department Head to turn my file of the case over to [the new counsel] and brief him on the case.”
With respect to her termination of the attorney-client relationship with Appellant, she noted:
[A]t the present time I have not been able to locate my paperwork on this case.
I do not recall how I was released from the case. What I recall is that the appellant did not sign any documents releasing me from representing him at the hearing.
There is no indication in the affidavit or otherwise in the record that she had any contact with Appellant regarding severance of the attorney-client relationship. See Dep’t of the Navy, Judge Advocate General Instruction 5803.IB [hereinafter JAGINST 5803.IB], Professional Conduct of Attorneys Practicing under the Cognizance and Supervision of the Judge Advocate General (2000), Rule 1.3 (Diligence)(“A covered attorney ... shall consult with a client as soon as practicable and as often as necessary upon being assigned to the case or issue.”); id. at Rule 1.4. (Communication)(“A covered attorney shall keep a client reasonably informed about the status of a matter[.]).” Despite the strong admonitions by the military judge that she maintain contact with her client when he waived his right to be present at the hearing, and her assurances that she would do so, there is no indication in the record that she had any contact with Appellant after December 1998. There is no indication in the record that she made any attempt to ascertain the expected date of his release from confinement or that she made any arrangements to maintain contact with him while he was on appellate leave.
The third document submitted by the Government is an affidavit from the second detailed defense counsel. After noting that his “recollection of the details” of his being detailed to represent Appellant was “limited”— emphasizing the confusion as to name of the client in the detailing letter—he offered the following description of his attempts to contact Appellant:
Upon being detailed I attempted to make contact with [Appellant] to discuss matters in the case, most importantly [first detailed defense counsel’s] proposed release as defense counsel. To the best of my recollection, we made attempts to contact [Appellant] both on the phone and in writing at his home of record to no avail. We also attempted to discover his then-current address by searching through phone listings, internet searches and searches of various LEXIS databases. These efforts were likewise unfruitful.
Appellant was then, as he is now, a member of the Navy. At all pertinent times, he was either in confinement or on appellate leave. As such, he was subject to the authority of the Disciplinary Barracks at Fort Leavenworth and the commanding officer of the naval unit to which he was assigned. The vague recollections by both the first and second detailed defense counsel do not establish that either counsel contacted the responsible officers at Fort Leavenworth or within *259 the Navy for information about Appellant. There is no indication in this record of a written request to any official from either counsel. Likewise, there is no indication in this record that either counsel sought assistance from naval investigative authorities in tracking down Appellant.
None of this was brought to the attention of the military judge. Given the serious concerns that the military judge had expressed about proceeding without Appellant’s presence at the session, his personal commitment to Appellant that he would be kept informed, and the assurance of counsel that she would maintain contact with Appellant, the failure to notify the military judge was both inexplicable and inexcusable. The failure to notify the military judge that an attorney-client relationship had been severed— and that the new counsel had not established such a relationship—not only affected the rights of Appellant, but also deprived the military judge of the opportunity to assess the impact of these developments on the proceedings in his courtroom. There are a number of steps he could have taken, such as ordering trial counsel to obtain the assistance of naval authorities in locating Appellant, providing for a limited postponement of the hearing, or, at a minimum, ensuring that all pertinent facts concerning the attorney-client relationships and Appellant’s absence were set forth on the record.
Under the Sixth Amendment to the Constitution, the accused in a criminal proceeding has the right to establish an attorney-client relationship and obtain committed and zealous representation by that attorney. U.S. Const, amend. VI; see, e.g., Argersinger v. Hamlin, 407 U.S. 25, 31, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Protection of that right is so central to the military justice system that Congress has guaranteed the accused the right to representation by qualified counsel at Government expense, regardless of financial need, in all general courts-martial and virtually all special courts-martial. Article 27, UCMJ. The right to representation by qualified counsel applies in court-martial hearings convened under United States v. DuBay, as reflected in the detailing of counsel in the present case.
Once an attorney-client relationship has been formed with a detailed defense counsel, a detailing authority may excuse or change the initially detailed counsel only when: (1) the client has obtained representation by individually requested military counsel under R.C.M. 506(b)(3); (2) detailed counsel is excused with the express consent of the client; or (3) the military judge permits detailed counsel to withdraw for good cause shown on the record. R.C.M. 505(d)(2)(B). See United States v. Gray, 39 M.J. 351 (C.M.A.1993)(mem.); JAGINST 5803.1B, Rule 1.16 and cmt (Declining or Terminating Representation). None of these circumstances appears in this record.
In summary, the first detailed defense counsel erred by not obtaining the consent of Appellant or approval of the military judge to sever of the attorney-client relationship. The second detailed defense counsel erred by not informing the military judge that he was appearing as Appellant’s counsel without having established an attorney-client relationship with Appellant. The military judge erred by not conducting an inquiry on the record regarding the circumstances surrounding the replacement of counsel that silently occurred in front of him.
The majority relies upon a preprinted form signed by Appellant in 1994, which stated: “I understand that in order for my trial defense counsel or any successor counsel to represent me properly, I must keep counsel informed of my current mailing address.” 60 M.J. at 254. I respectfully disagree with the suggestion that this standard form, signed in the immediate aftermath of trial—more than four and one-half years prior to the DuBay hearing—relieved either counsel or the military judge at the DuBay hearing of the specific responsibility, acknowledged by each on the record, to ensure appropriate contact with Appellant so that he would be provided with timely information about the DuBay proceedings.
The majority opinion also places the burden on Appellant to demonstrate the specific *260 prejudice flowing from the error by making a colorable showing of possible prejudice, and concludes that Appellant has failed to meet that burden. 60 M.J. at 255-56. The opinion relies on the standard we have used in cases involving post-trial submissions to the convening authority. I respectfully disagree.
Although post-trial submissions to a convening authority are an important aspect of the military justice system, the convening authority’s action is not a court-martial proceeding. The accused has the right to make submissions to the convening authority in writing. There is no right to a hearing before the convening authority. There is no subpoena power, no opportunity to present testimony, and no cross-examination of witnesses. The convening authority is not required to make findings of fact or reach conclusions of law. It is primarily an opportunity to seek clemency, a matter that is within the sole discretion of the convening authority. See Article 60, UCMJ, 10 U.S.C. § 860 (2000); R.C.M. 1105-1107.
Although detailed counsel frequently represents an accused in making submissions to the convening authority, substitute counsel may be appointed at that stage if detailed counsel has been relieved or is not reasonably available. R.C.M. 1106(f)(2). The cases cited in the draft opinion deal with failure of a properly appointed substitute counsel to establish an attorney-client relationship and do not involve the severance of an attorney-client relationship, continuity of counsel, or the role of the military judge in ensuring the fairness of an adversarial proceeding.
A DuBay proceeding, by contrast, involves hearings employing the powers of a court-martial, including discovery, compulsory process, application of the rules of evidence, and the right to call and cross-examine witnesses. The military judge makes findings of facts and enters conclusions of law on matters referred to the proceeding. In such a setting, the establishment of an attorney-client relationship, continuity of counsel, and the role of the military judge in any change of counsel are critical to ensuring the reliability of the proceeding.
In the present ease, Appellant faced the possibility of longer confinement as a result of attending a DuBay hearing ordered by our Court. Counsel did not seek redress from the military judge or from our Court, but instead facilitated Appellant’s waiver of the right to attend the hearing, while assuring Appellant and the military judge that there would be continuity of communication. Counsel subsequently terminated the attorney-client relationship without informing the client or the court. A new counsel purported to represent Appellant without establishing an attorney-client relationship and without informing the court of that defect. The military judge observed the change of counsel without establishing any of the pertinent facts on the record. The affidavits submitted by both counsel underscore the absence of attentive and timely efforts to communicate with Appellant.
The only information in the record regarding the existence, content, and disposition of the videotape comes from the news media entity that sought to withhold the information from Appellant at trial and during appellate proceedings. The defense did not seek to subpoena, examine, or cross-examine any individuals with potential first-hand knowledge of these matters. It may well be that this is a simple case of a videotape that did not capture any matter pertinent to Appellant’s trial, that the videotape was destroyed as a matter of routine, good-faith disposition, and that the burden of proving otherwise cannot be met by the defense. Such conclusions, however, should not be drawn from a DuBay proceeding marred by failure to follow the basic requirements for establishment and termination of the attorney-client relationship. In that context, the record does not provide an acceptable response to the questions referred by this Court for consideration in the DuBay proceeding.