PYLE, Judge
concurring in result with opinion.
[29] I concur with my colleagues holding, but I write separately because I believe Middleton’s counsel’s performance fell below current objective professional norms and also prejudiced Middleton. During voir dire, Middleton’s counsel properly explored the issue of race with prospective jurors. However, counsel referred to his absent client as a “Negro.” In a sterile environment, this word might not be any more offensive than the next. But, we do not live in a sterile environment. Words have power. Words convey explicit and implicit meanings they have acquired. While many dictionaries may still define the term “Negro” as “a person of black African origin or descent[,]” it is also cross referenced with the vile slur known euphemistically as “the N-word.” OXFORD English Dictionary, http://www. oed.com (last visited November 21, 2016) [hereinafter OxfoRd English Dictionary]. “Negro” is not a word that is used solely to distinguish one group of society from another; today’s usage of this word does not embrace “‘that intent.... [I]t flows from the fountain of purpose to injure.’” Randall' Kennedy, Nigger: The Strange Career of a Troublesome Word 5 (2002) (quoting Hosea Easton, A Treatise on the Intellectual Character and Civil and Political Condition of the Colored People of the United States: and the Prejudice Exercised Towards Them (1837)) (emphasis added). For this reason, the United States Census Department, among many other public and private entities, has stopped using the term “Negro” on census surveys.[8] H. Yen, US stopping use of term ‘Negro’ for census Surveys, Associated Press, Feb. 6, 2013. The United States Army has also followed suit. Associated Press, Army drops use of the term Negro in document, Washington Post, (Nov. 6, 2014). While these are relatively recent examples of what has long been understood, it seems likely that Middleton’s counsel also understood the gravity of his choice of words; he quickly tried to correct himself and reframe his error under the guise of “political correctness.”
[30] In the context of a criminal jury trial, counsel’s use of the term “Negro” to refer to his client in front of the potential jurors, who would determine whether he was guilty or not, goes far beyond “political correctness.” The right to counsel is constitutional and indispensable to the fair administration of justice. See Gideon v. Wainwright, 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Connected to this right is counsel’s legal duty to defend Middleton, to advocate for him, and to not act against his interests. Ind. Admission and DISCIPLINE Rule 22. While counsel properly performed many other tasks on behalf of his client, he also prejudiced his client. Before evidence had even been introduced, potential jurors saw and heard Middleton’s attorney, the person who was supposed to be his advocate, refer to Middleton in a racially offensive manner. *903 While there is no evidence that counsel intended harm to Middleton, the harm was nonetheless inflicted. Middleton was presented to potential jurors in a racially offensive manner. For these reasons, I believe counsel’s performance during voir dire was deficient and also prejudiced Middleton. Nonetheless, in order for us to reverse the trial courts denial of Middleton’s petition, we would have to believe that “but for counsel’s errors, the result of the proceeding would have been different.” Oberst v. State, 935 N.E.2d 1250, 1254 (Ind.Ct.App.2010). In this case, the evidence against Middleton was considerable. As a result, I am not convinced that the result would have been different.

. " ‘Negro’ is still, however, used in positive contexts as part of the names of certain organizations, particularly the United Negro College Fund, and in historical context, with reference to baseball’s- Negro Leagues.” Oxford English Dictionary.