Lepley, Plaintiff in error, v. State, Defendant in error.

Supreme Court

*No. 77–091–CR. Argued May 2, 1979.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 124.)

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The basic question on this appeal is whether the inquiry made by the court which ac-

cepted Leonard Lepley's plea of guilty to first degree murder in 1946 was sufficient to determine the defendant's competency. An additional question, only peripherally posed by the defendant but which we believe should be resolved, is whether sufficient facts were elicited at the inquiry made in 1946 to show that Lepley was competent to proceed. We conclude that a sufficient inquiry was conducted and that it demonstrated Lepley's competence to stand trial. We affirm.

On his plea of guilty, the defendant, Leonard Lepley, was found guilty of first degree murder. When the plea was entered on October 21, 1946, Lepley was sixteen years old. He was sentenced to life imprisonment at Waupun State Prison. The record shows that Lepley was paroled in 1958. That parole was later revoked and he is now in the Waupun State Prison, where he continues to serve the sentence imposed in 1946.

In 1976, pursuant to the provisions of sec. 974.06, Stats., Lepley filed a motion for postconviction relief. He claims that he was unconstitutionally convicted because the trial judge in 1946, after being made aware of the defendant's questionable mental condition, failed to conduct an appropriate inquiry to determine Lepley's competence. The sec. 974.06 motion was heard by the circuit court for Ashland county. The motion to withdraw the guilty plea and for a new trial was denied, because the circuit court concluded that the trial court in the 1946 proceedings complied with the applicable statute and with the case law which then governed the determination of competency.

The entire transcript of the 1946 proceedings was before the circuit court on the postconviction motion and is before us on appeal. The basic facts on which Lepley was found guilty of first degree murder were that he, in the company of his brother, lay in wait for a neighbor, Elmer Stettler, and when Stettler emerged from his home, Lepley shot him with a 30–30 rifle.

Lepley was promptly arrested and charged with first degree murder.

In accordance with the requirements of Wisconsin law, which antedated *Gideon v. Wainwright,* 372 U.S. 335 (1963), by more than one hundred years, counsel was appointed at state expense. *See, Carpenter v. Dane County,* 9 Wis. 249 (*274) (1859). The record shows that Lepley's counsel had the opportunity of conferring with him on several occasions between the date of the appointment and the date of the guilty plea. From these conversations and from conversations with the district attorney, defense counsel learned that, from 1942 to 1944, Lepley had been an inmate at the Northern Wisconsin Colony, an institution for the mentally deficient. The record also shows defense counsel and the district attorney asked the superintendent of the Colony about Lepley's confinement there. A letter from the superintendent of Northern Colony setting out the facts surrounding Lepley's commitment was given to the judge by the district attorney prior to the day the guilty plea was entered.

The report recited that Lepley had been judicially committed to Northern Colony as mentally deficient, that he was in good physical condition, and that various psychometric tests given him while at the Colony showed he had an IQ of 74 on one occasion and 73 on another. The superintendent of the institution stated that Lepley had "made good progress in academic work as well as in weaving and manual training."

Defense counsel, although stating that his concern about the defendant's low intelligence compelled him to bring it to the attention of the court, nevertheless felt "that he has sufficient mentality to legally determine the distinction between right and wrong."

Lepley, with counsel present, was asked whether he wished to plead guilty or not guilty. Lepley responded,

"Yes sir, guilty." Defense counsel was then asked whether he had advised Lepley to plead guilty and, after some intervening discussion relating to the defendant's past mental history, stated, "I have advised him to plead guilty; he says he wants to plead guilty . . . ."

At that point the district attorney was asked to state the circumstances of the crime. He stated that, the evening before the killing, Lepley and his young brother attempted to break into Elmer Stettler's root cellar. Stettler saw them on the property and told them to stay away. The next day Lepley and his brother went to the Stettler place, with Lepley carrying a loaded 30–30 rifle. The district attorney stated that the defendant told him that "he was going to get Stettler." The two boys waited from 9 a.m. until 2 p.m. for Stettler to come out of his home. When Stettler came out to work in the yard, Lepley stepped out with a rifle. He and Stettler exchanged words, and then Lepley shot Stettler. Mrs. Stettler, the widow of the victim, who witnessed the shooting, also testified and confirmed the district attorney's statement.

Following the district attorney's statement, the court asked the defendant Lepley, "Is that substantially what took place Leonard, or do you want to add to it or change it?" Lepley answered, "No, that is okay, sir." The judge's questioning of Lepley elicited the fact that, the night before the killing, Lepley decided that he would kill Stettler and that he loaded the rifle the night before. He stated that he knew that upon conviction he could go to prison.

The judge also asked Lepley about his education, where he went to school, when he went to school, and specifically asked about his experience at Northern Colony. Lepley stated, in response to the judge's questioning, that after killing Stettler he shot at other members of

the Stettler family who were outside the house, to prevent them from returning to the house to get a gun.

Were there not evidence in the record to show that Lepley had previously been adjudicated mentally deficient, there is nothing in the transcript at the time of the plea of guilty to suggest that Lepley was mentally incompetent. His answers to the judge's questions were for the most part responsive and demonstrated a comprehension of the reality of the situation in which he was placed at the time. He evidenced a full recall of important factors relevant to the charges against him.

Following the extensive colloquy between the judge and the defendant, further statements by defense counsel and the district attorney, and questioning of a juvenile probation officer, the court adjudged the defendant guilty and committed him to the state prison. After the pronouncement of sentence, Lepley asked where the imprisonment would be served. He asked, "Will that be for the rest of my days?" and "There would not be any chance of getting a pardon?"

The entire transcript of the proceedings demonstrates that on the date that the guilty plea was taken the defendant was aware of what was going on and his answers to questions were responsive and lucid.

Whether this proceeding was insufficient depends on whether there was compliance with the statutory requirements as they existed in 1946. The controlling statute is sec. 357.13, Stats. (1945):

"357.13 **Insanity at the time of trial or conviction.** (1) If the court shall be informed, in any manner, that any person indicted or informed against for any offense probably is, at the time of his trial, or after his conviction and before commitment, insane, or feeble-minded and thereby incapacitated to act for himself, the court shall, in a summary manner, make inquisition thereof by a jury or otherwise as it deems most proper.

"(2) If it shall be determined by such inquisition that such accused person is insane or feeble-minded his trial,

sentence, or commitment for such offense shall be postponed indefinitely, and the court shall thereupon order that he be confined in the central state hospital or in an institution to be designated by the department of public welfare."

The statute directed the court to determine capacity "in a summary manner." It also provided that the court in its discretion could make the inquiry which seemed appropriate under the circumstances, by a jury or otherwise as it "deems most proper."

The statute in effect at the time of Lepley's plea of guilty was essentially the same as sec. 4700, Stats. (1898). That statute provided that, if it came to the court's attention that a defendant was of deficient capacity, the court was directed "in a summary manner, [to] make inquisition thereof by a jury or otherwise as it deems most proper." This language is identical to that in the 1945 statute.

On at least two occasions, interpreting the 1898 statute, this court has held that the determination of capacity could be made without a jury and in the midst of criminal proceedings. *Steward v. State,* 124 Wis. 623, 632, 102 N.W. 1079 (1905); *Dietz v. State,* 149 Wis. 462, 480, 136 N.W. 166 (1912). At the time of Lepley's conviction, the statutes and the case law required a trial court, when it became aware of the defendant's possible incompetence, to halt the proceedings and to determine in a summary manner whether the defendant had the capacity to understand the proceedings against him and to consult with and assist his counsel.

The trial court in 1946 became aware of the possibility of Lepley's incompetence when the district attorney, before the proceedings, placed a letter from the Northern Colony in the judge's hands. Also, the defense attorney at the proceedings stated that he was concerned about his client's mental condition. The record demonstrates that as soon as the defendant stated that he wished to

plead, the court interrupted, stating, "Just a minute—you have something to say about it, Mr. Johnson?" It was at that point that defense counsel expanded upon his concern about the defendant's mental condition.

Thereafter the court directed that documentary evidence pertaining to the defendant's mental condition be placed in the record. The court then engaged in a lengthy colloquy with Lepley which established the defendant's basic understanding of the proceedings and his ability to consult with counsel.

After the 1977 hearing on the motion for postconviction relief under sec. 974.06, Stats., the circuit judge concluded that the trial judge in 1946 conducted an inquisition into the defendant's mental state in conformity with the provisions of sec. 357.13, Stats. (1945). We agree with the circuit court's conclusion and affirm the order denying postconviction relief, because, contrary to the assertion of the public defender, sufficient inquiry was conducted to determine the defendant's competency. Without doubt the colloquy with Lepley and the proceedings undertaken by the trial judge satisfied the statutory requirements of a summary inquisition into capacity as mandated by sec. 357.13, Stats. (1945).

Moreover, we conclude that the record on its face demonstrates that on October 21, 1946, Leonard Lepley was competent to stand trial. This court in *State ex rel. Haskins v. Dodge County Court,* 62 Wis.2d 250, 265, 214 N.W.2d 575 (1974), accepted the test set forth in *Dusky v. United States,* 362 U.S. 402 (1960):

" '[W]hether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' "

In view of the fact that the tests for competency to proceed to trial were not set out as completely in 1946 as they have been recently, *e.g., State ex rel. Haskins v. Dodge County Court, supra,* we conclude that the late Judge Risjord, the trial judge in 1946, made a legally sufficient and commendable inquiry to determine capacity before he proceeded with the acceptance of the guilty plea. He appointed counsel prior to the plea proceedings and determined at the proceedings that the defendant had had an opportunity to consult with his counsel. He made specific inquiries of the defendant to determine the extent of the defendant's education and general comprehension. He specifically asked Lepley what schools he had attended and asked him about any problems that he had had at school. The judge had before him psychometric examinations and psychiatric evaluations, which indicated that Lepley, although not of high intellectual ability, was able to do borderline schoolwork and that he was not classified as mentally deficient, although he indeed was a borderline deficiency case. He asked the defendant whether he agreed with the district attorney's version of the crime.

Although the plea was not taken with the formalities which we would now require,[1] the questioning brought out the fact that the killing was premeditated and intentional and that the defendant was aware at the time of his plea of guilty that he could receive a substantial prison sentence. The colloquy also established that Lepley, in several conversations with his counsel, had stated that he wanted to plead guilty. As stated above, the defendant's responses to questions were lucid and gave no hint of any gross mental deficiency.

We are satisfied that the procedure utilized by the trial judge in 1946 constituted a sufficient inquiry into competency and that the inquiry undertaken, on its face,

---

[1] The procedures required now are set out in sec. 971.14, Stats.

demonstrated that Lepley was competent to proceed to trial, to consult with counsel, to assist in his own defense, and to waive the constitutional rights which a trial on the merits might have afforded him.

The standard for withdrawal of a plea of guilty is "manifest injustice." *State v. Reppin,* 35 Wis.2d 377, 385, 151 N.W.2d 9 (1967). For a claim of manifest injustice to succeed, a defendant is required to prove by clear and convincing evidence that his plea was taken under unacceptable circumstances. That evidence is lacking in the present case.

The judge in the proceedings on the postconviction remedy found no violation of a constitutional nature and found that the original sentencing judge acted in conformity with the statutes as they existed in 1946. Our review of the record convincingly demonstrates to this court that the trial judge in 1946 appropriately made an inquiry into the question of the defendant's competency, and the record is equally convincing in its demonstration that the defendant under the standards of *Dusky v. United States, supra,* was competent to stand trial. Accordingly, we affirm the order of the trial judge denying the motion for postconviction relief.

*By the Court.*—Order affirmed.