Harold Ed BURNETT,
Plaintiff–Appellant,

v.

Larry D. KERR and United States of America, Defendants–Appellees.

No. 87–1003.

United States Court of Appeals,
Tenth Circuit.

Jan. 4, 1988.

Art Fleak, Tulsa, Okl., for plaintiff–appellant.

Susan W. Pennington, Asst. U.S. Atty. (Ben Baker, Asst. U.S. Atty., on the brief), Tulsa, Okl., for defendants–appellees.

Before HOLLOWAY, SETH and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Harold Ed Burnett was convicted of first-degree murder and sentenced to life imprisonment. His conviction was affirmed on appeal. *United States v. Burnett*, 777 F.2d 593 (10th Cir.1985). Burnett then filed a petition for a writ of habeas corpus on the basis of ineffective assistance of counsel. The district court denied the petition, and we affirm.

## I.

On April 15, 1982, Harold Ed Burnett, Michael Simpson, and Dale Jackson shot and killed Labon Marchmont Miles. Burnett and Miles were both Indians, and the shooting took place in Miles' home, a restricted Osage homestead allotment. The United States therefore had exclusive jurisdiction over the trial of Burnett, *id.* at 594–97, and Burnett was tried with Simpson in the District Court for the Northern District of Oklahoma. Burnett argued that he killed Miles in self-defense, and testified to that effect. After a four day jury trial, he was convicted of first degree murder.

During the course of the trial, the prosecutor questioned Burnett on cross-examination about his presence at the scene of a homicide committed by Miles. Miles had "stomped" a woman to death. Burnett was present at the time, and later testified against Miles at Miles' felony trial. Miles subsequently made death threats against Burnett and his family. After questioning Burnett about this incident, the prosecutor asked Burnett whether he had ever been present at any other homicide scene. Burnett answered "Yes." His attorney immediately moved for a mistrial and dismissal with prejudice.

The court reserved its ruling on the motion and admonished the jury to ignore the question and answer. Testimony continued. The following morning the court gave thorough consideration to the motion, and granted a mistrial. When the court announced that the new trial would commence the following Monday, Burnett's attorney asked to confer with his client. He then stated that if the court refused to dismiss the case with prejudice instead of granting a mistrial without prejudice, Burnett preferred to continue with the existing jury panel. After the court questioned Burnett to ensure that this was in fact Burnett's choice, the trial continued. On appeal, we held that Burnett's due process rights were not denied by permitting the trial to proceed under these circumstances. *Id.* at 597.

Before closing arguments, a jury instruction conference took place. Burnett's attorney objected to the court's proposed instruction on self-defense on the ground that it was an incorrect statement of the applicable law. He renewed an oral request made three days earlier that a different instruction be given. The court denied his request because he had not submitted a written instruction. On appeal, we held

that the instruction given by the district court was a correct statement of law, *id.* at 597, and that the district court did not err in rejecting the oral instruction offered by Burnett's attorney, *id.* at 598.

## II.

The right to counsel is guaranteed by the Sixth Amendment.[1] This provision has been interpreted to mean not only that the government may not prevent a defendant from being represented by counsel, but also that the government has the affirmative obligation to provide counsel for those criminal defendants who cannot afford such services themselves. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama,* 287 U.S. 45, 71–72, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932). This right to counsel is not merely the right to have a person who is a lawyer at one's side during trial; it is the right to effective assistance of counsel at all substantial phases of the criminal justice process. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* 466 U.S. 648, 655–56, 104 S.Ct. 2039, 2044–45, 80 L.Ed.2d 657 (1984); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970).

To prevail on his claim of ineffective assistance of counsel, Burnett must make two showings. First, he must prove that his counsel was so incompetent that he did not provide the "Assistance of Counsel" guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. Second, Burnett must prove that counsel's errors fatally prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. He thus must show "that there is a reasonable probability that, but for [his] counsel's unprofessional errors the result of [his trial] would have been different. A reasonable probability is a probabil-

ity sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Because appellate courts enjoy the benefits of hindsight, and because competent attorneys must often choose from a broad range of possible strategies, courts must adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding; specifically, we must consider whether the adversary process upon which we rely to achieve justice broke down in such a way that we nor longer have confidence that the result of the trial is correct. *Id.* at 696, 104 S.Ct. at 2069.

Burnett, now represented by new counsel, argues that his appointed trial counsel was ineffective under this standard. He lists three instances of counsel's alleged ineffectiveness:

"A. Counsel was inadequate when he: 1) failed to advise appellant of his Fifth Amendment right not to testify, and 2) instead advised him that he had to take the stand and give testimony, thus incriminating himself.

"B. Counsel was inadequate when he: 1) moved for a mistrial, and 2) obtained the Trial Court's favorable ruling, then 3) decided he did not want to try the case again, and 4) withdrew his Mistrial Motion.

"C. Counsel was inadequate when he failed to request, in writing, an adequate instruction on self-defense."

Brief of Appellant at iii.

### A. The Right to Remain Silent

█ Failure by counsel to advise a client of his right to remain silent, and a representation by counsel that a client has no choice under law but to take the stand would be among the most serious instances of attorney error. In this case, however, there is no evidence to support Burnett's claim. The sole evidence on the issue is an

---

1. "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

affidavit submitted by Burnett's trial counsel at the direction of the district court during its consideration of the habeas petition. The affidavit reads, in relevant part, as follows:

"I believe that I did inform Petitioner of his Fifth Amendment right not to testify. It is entirely possible and likely that I told Petitioner that his failure to testify might be detrimental to his defense in the eyes of the jury despite an instruction from the Judge to the contrary."

Brief of Appellant at App. A. Burnett submitted no affidavits or other evidence to contradict the attorney's statement. While the affidavit submitted is not as definite as we would wish, we cannot read it as anything other than some evidence that counsel did in fact inform Burnett of his right not to testify.[2] Burnett has thus not sustained his burden of proof on this issue.

### B. The Mistrial Motion

It is clear from the record that the district court was surprised when Burnett's attorney informed it that he wished to withdraw his motion for a mistrial after the court had granted it. The court had given counsel ample opportunity to argue the motion, had given the motion serious consideration, and "after a great deal of soul searching as to [Burnett's] rights as an American citizen being tried under our justice system ...," rec., vol. VI, at 505, had at length decided in favor of granting the motion.

The court questioned Burnett's attorney closely as to his reason for withdrawing his motion. Counsel explained that his request from the beginning had been for a mistrial and dismissal with prejudice, on the ground that the fatal question had been asked intentionally. He explained further,

"Your Honor, I have conferred with my client and he informs me that he has been through this for two years already, sir, and he has been through this for four days here and his family has, too. He understands and he is willing to take the stand and confer [sic] this to Your Honor, too, on the record but he likes this jury panel. He has—we have picked them, he has testified before them and he is willing to put his faith in their hands....

"... He has testified once. The government will have opportunity for further using their investigative resources to try to pick apart his story. He wants to go ahead with this panel."

Rec., vol. VI, at 503–05. The court then questioned Burnett, asking him whether he "waive[d] any objection now and forever more in regard to this statement made by [the prosecutor] during your cross-examination ... regardless of what this jury may do?" *Id.* at 505. Burnett replied that he did. *Id.*

■ Burnett's attorney thus had conferred with his client and had two legitimate reasons for declining the mistrial—Burnett liked the jury panel, and he feared the use the government might make of his testimony at a subsequent trial. Burnett was present during this discussion and freely waived any objections, on the record. Given the broad deference we must accord counsel's judgment, the legitimate reasons for the decision, and Burnett's express approval, and given that we have already held that Burnett's due process rights were not violated by permitting the trial to proceed, we hold that Burnett's counsel's decision to withdraw his motion for a mistrial did not render his performance constitutionally ineffective.

### C. The Self–Defense Instruction

■ Whether or not failing to present jury instructions in writing could ever render an attorney's performance unreason-

**2.** The district court characterized the affidavit as "somewhat ambivalent" and relied instead on its conclusion that Burnett was forced to testify because his co-defendant Simpson "had taken the stand and effectively convicted his co-defendants. Tactically, the only hope Burnett had for exculpating himself was to testify." Order, rec., vol. I, doc. 79 at 5. The court was mistaken, however, as to the order of testimony. Burnett testified before Simpson, and it was Simpson who was forced to take the stand. Rec., vol. VI, at 506–07, 536. This mistake is not crucial given our conclusion above.

ably ineffective, Burnett was not prejudiced in this case. This court has already held that the instruction actually given by the district court was a correct statement of law. *Burnett,* 777 F.2d at 597. We further upheld the power of the court to refuse to accept the instruction Burnett's attorney offered on the ground that it was not properly submitted. *Id.* at 598. The record suggests, moreover, that the district court's refusal was based in part on a rejection of the attorney's argument that the court's instruction was based on the wrong jurisdiction's law. Rec., vol. VI, at 618–25. The failure by Burnett's attorney to submit a more favorable instruction in writing thus did no more than provide the court with an additional reason for refusing an instruction it was not obliged to accept. The result of this failure, under our holding in *Burnett,* was that a correct self-defense instruction was given. We fail to see any lack of fundamental fairness to Burnett from being convicted under a standard we have already upheld as correct.

In short, in none of the three instances cited to us by Burnett on this appeal do we see convincing evidence of ineffectiveness on the part of counsel.

Affirmed.