# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 2000 Session

## TERRANCE PULLIAM v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-19903     Carolyn Wade Blackett, Judge**

---

**No. W1999-00277-CCA-R3-PC - Decided August 30, 2000**

---

The Defendant, Terrence Pulliam, appeals as of right from the trial court's denial of post-conviction relief. He asserts that the trial court erred by finding that he received effective assistance of counsel at trial. The Defendant argues generally that counsel was ineffective due to failure to thoroughly investigate his case and to call relevant witnesses, failure to properly advise him throughout the process, and failure to properly impeach State witnesses. We conclude that the evidence does not preponderate against the trial court's finding that the Defendant received effective assistance of counsel at trial. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal; Judgment of the Criminal Court Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN, J., and CORNELIA A. CLARK, SP. J., joined.

Alicia A. Howard, Memphis, Tennessee, for the appellant, Terrance Pulliam.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William Gibbons, District Attorney General; and Michael H. Leavitt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On January 11, 1995, a Shelby County jury found the Defendant, Terrance Pulliam, guilty of first degree murder. He was sentenced to life imprisonment. This Court affirmed the Defendant's conviction and sentence on direct appeal, and the supreme court denied review. See State v. Pulliam, 950 S.W.2d 360 (Tenn. Crim. App. 1996). In our opinion regarding the Defendant's direct appeal, we set forth the facts giving rise to the Defendant's conviction as follows:

> The conflict between the appellant and Lee Franklin [the victim] began in July, 1992, when the appellant shot Franklin's brother. Following this incident, according to the State's witnesses, Franklin and the appellant occasionally engaged in verbal altercations. On October 2, 1993, at approximately 12:45 a.m., Franklin, his cousin

Cameron Aldridge, and a friend Robert Barr, went to Club Memphis to socialize and dance. None of the group drank while at Club Memphis, as the Club does not serve alcohol to those under twenty-one. The group left the Club at approximately 3:20 a.m. to return home. As they entered the parking lot, they encountered another acquaintance, Christopher Body. Body informed Lee Franklin that he had seen the appellant in the parking lot. At this point, Aldridge got into Body's car. Body then circled the parking lot and backed his car into a space adjacent to Franklin's Ford Bronco. The Ford Bronco was parked facing the sidewalk and the street. Franklin and Barr walked toward the Bronco. Barr noticed that the front passenger window of the Bronco had been broken while the group had been inside the Club. As he and Franklin approached the Bronco, the appellant's car hit Franklin at an approximate speed of 30 to 40 miles per hour. The appellant then jumped from his car and fired his gun approximately three times in Franklin's direction. Barr testified that the gun was "[s]ome kind of like a black automatic -- like a little automatic .25 -- anywhere from .25-.32 automatic; something like that." Franklin attempted to run, but fell to the grass in front of his Bronco and rolled onto the sidewalk. The appellant drove out of the parking lot and turned onto the street in front of the Bronco. At this point, Franklin indicated to Robert Barr that he had been shot. Robert Barr testified, "So when [Franklin] said 'I been shot' that's when [the appellant] stops in the middle of the street, comes, like, over to the passenger's side [of his vehicle], aims out, shoots again." Cameron Aldridge testified that, as the appellant shot at Franklin a second time, he said, "If I didn't get you this time, I got you this time, boy." According to the State's witnesses, neither Franklin nor his companions were armed.

Id. at 362.

The Defendant subsequently filed a petition for post-conviction relief, which was amended after appointment of counsel. In his amended petition, the Defendant made the following allegations:

1. Attorney Robert M. Brannon, Jr. ineffectively represented him and failed to properly advise him as to his rights at all stages of the proceedings against him, and such failure to represent violated Appellant's Sixth and Fourteenth Amendment rights.
2. Trial counsel failed to properly advise him about plea-bargaining.
3. Trial counsel failed to request and obtain exculpatory favorable evidence. Further, trial counsel did not afford appellant the opportunity to glean information about the State's case against him through formal proceedings and failed to conduct appropriate investigations, both factual and legal, to determine what matters of defense could be developed.
4. Trial counsel failed to develop a reasonable trial strategy or defense.
5. Trial counsel failed to investigate for witnesses and/or prepare and present them during the phase of the trial to demonstrate all aspects of appellant's character and background.

-2-

6. Trial counsel failed to recall state witnesses upon rebuttal to clarify misleading information presented in the trial.

7. Trial counsel failed to make appropriate objections to inadmissible testimony and/or proof.

8. Trial counsel failed to sufficiently advise appellant of his Fifth Amendment right against self-incrimination.

9. Trial counsel allowed him to testify, which proved to be critically fatal to appellant's case.

10. Trial counsel failed to represent appellant zealously.

The trial court conducted an evidentiary hearing, after which it found that the Defendant was not denied the effective assistance of counsel at trial, and it denied the Defendant's petition for post-conviction relief. At the hearing, the only two witnesses were the Defendant and his trial counsel, Robert Brannon. The Defendant testified generally about the things he believed his trial counsel should have done differently. The Defendant did not, however address all of the allegations in his petition during the evidentiary hearing. The allegations of ineffectiveness which were addressed at the hearing and which are raised on appeal fall into three general categories: failure to thoroughly investigate and call witnesses; failure to properly advise the Defendant; and failure to properly impeach State witnesses.

Relief under our Post-Conviction Procedure Act will be granted when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by either the Tennessee Constitution or the United States Constitution. Tenn. Code Ann. § 40-30-203. In Gideon v. Wainwright, 372 U.S. 335 (1963), the Supreme Court held that the Sixth Amendment right to counsel was "'so fundamental and essential to a fair trial . . . that it is made obligatory upon the States by the Fourteenth Amendment.'" Id. at 340 (quoting Betts v. Brady, 316 U.S. 455, 465 (1942)). This right to counsel includes the right to effective counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).

To determine whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that counsel was ineffective at trial, a petitioner bears the burden of showing that his or her counsel made errors so serious that he or she was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner, resulting in a failure to produce a reliable result. Strickland, 466 U.S. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn.

1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper 849 S.W.2d at 746.

If afforded a post-conviction evidentiary hearing by the trial court, a petitioner must do more than merely present evidence tending to show incompetent representation and prejudice; he or she must prove factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held, findings of fact made by that court are conclusive and binding on this Court unless the evidence preponderates against them. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Cooper, 849 S.W.2d at 746 (citing Butler, 789 S.W.2d at 899).

## FAILURE TO INVESTIGATE AND CALL WITNESSES

The Defendant maintained at the evidentiary hearing that his attorney, Robert Brannon, failed to properly investigate his case and call witnesses. He testified that Mr. Brannon should have talked to his girlfriend at the time, Akisha Estridge, who could have testified that he was with her until shortly before the shooting and that he was not planning a murder that evening. Mr. Brannon misunderstood the Defendant's testimony and stated that he thought the Defendant wanted Ms. Estridge called as an alibi witness. He testified that there was no need for an alibi witness because the Defendant never denied shooting the victim. Both Mr. Brannon and the Defendant agreed that the Defendant's only defense was based on a theory of self-defense. However, Mr. Brannon also testified that he felt he had sufficient witnesses to establish self-defense, and he did not want to take the chance of calling more witnesses than he needed and having them say things which could harm the Defendant's case.

The Defendant also testified that Mr. Brannon should have called the victim's ex-girlfriend, Sabrina Bowen, to testify. He claimed that she could have testified regarding the "bad blood" between the victim and him. Mr. Brannon admitted that the Defendant wanted Ms. Bowen to testify, but he said he made the decision not to call Ms. Bowen because he already had "ample evidence to show that there was not a good relationship" and because he was afraid that he would have "alienated the jury if we kept up with this continuous barrage of the on going [sic] bad blood." At trial, Mr. Brannon called Montreal Reed, a good friend of the Defendant, Carl Beery, the Defendant's stepfather, and the Defendant himself to establish the "bad blood" between the two parties. See Pulliam, 950 S.W.2d at 362-63.

The Defendant asserted that his attorney should have called various members of his family to testify as to his good character. Mr. Brannon explained that he did not want the Defendant's character to become an issue. He said,

> Mr. Pulliam had a conviction for Aggravated Assault. He, during the time that some of the events had occurred, one of the events in particular, he was at the, on leave from the Youth Center. To call character witnesses would have simply heightened and given the State an opportunity to have sort of, and I don't want to be disrespectful, but to put him on the cross. And, brought his character, as the last thing out, to the jury. We didn't want them focusing on Mr. Pulliam's character.

The Defendant claimed that because there were many people in the parking lot of Club Memphis when the shooting occurred, Mr. Brannon should have ascertained who those people were and called them to testify. When asked about why he did not find those possible witnesses, Mr. Brannon explained,

> None of the investigative reports indicated anybody came forward on the parking lot other than the persons that we were aware of, that was the individual in Mr. Pulliam's car who was present with him. It was the individuals that you are aware of that were with the victim. There was no indication that anybody else at [sic] any time. And, the police were there within a matter of moments. Frankly, my assessment of what happened is, when the shooting started the people scattered.

Finally, the Defendant claims that his counsel should have had fingerprints lifted from the bullets that were found at the scene. He said, "Well, it seems it was some bullets at the scene of the crime that weren't mine. And I asked Mr. Brannon to get some fingerprints on the bullets but he did not do so." Mr. Brannon testified that the gun used by the Defendant was a thirty-eight caliber and that the casings to which the Defendant referred were nine millimeter casings which could not have been fired out of the Defendant's gun. The bullet which killed the victim could have been fired out of a thirty-eight caliber gun. The Defendant did not deny shooting at the victim. Therefore, Mr. Brannon determined that those nine millimeter shell casings had no relevance to the Defendant's case and that there was no reason to test them for fingerprints.

After hearing this testimony, the trial court determined that the decisions Mr. Brannon made regarding calling witnesses and investigating the case were tactical decisions which should not be judged in hindsight, and Mr. Brannon had not been shown to be ineffective by his actions. The evidence certainly does not preponderate against the trial court's findings; therefore, we conclude that the trial court did not err in determining that the Defendant's trial counsel was not ineffective for failing to properly investigate and call witnesses.

## FAILURE TO PROPERLY ADVISE

The Defendant contends that his counsel was ineffective for failing to properly advise him throughout the case. Specifically, he asserts that he did not understand what rights he was waiving by testifying at trial. He said that he testified "to try to tell my side of the story," but that he thought his testimony hurt his case. On cross-examination, the Defendant stated, "He told me that, when I was going to trial, that I had a choice to take the stand. I thought taking the stand would be the right thing to do because I wanted to tell what was going on." He also said that his attorney did not sufficiently advise him about the plea offers made by the State. He admitted that he knew the State had made one offer of fifty years at forty-five percent and then another offer of fifteen years at one hundred percent, but he maintained,

> I believe that if I was explained the plea bargaining strategy that I would have took the time, took that plea bargain. Because I didn't know I was going to get this much time, you know what I'm saying, because I thought I had a good case and I know he

was trying to kill me. You know, I never lied about killing him or nothing. You know and I thought I had a good case. And, I was expecting to do some time, but I didn't think I was going to get a life sentence for it.

Mr. Brannon testified that he discussed the ramifications of a plea agreement with the Defendant and the possible consequences of going to trial. The Defendant rejected both of the State's plea offers in writing and indicated that he would only accept a fifteen year sentence at sixty percent. Mr. Brannon was concerned about going to trial and having the Defendant take the stand because of the negative information regarding the Defendant that would be revealed to the jury, and he said that he discussed that with the Defendant. Although Mr. Brannon believed that the Defendant had a good defense, the Defendant was facing a life sentence if convicted of first degree murder. Mr. Brannon declared,

So, we discussed the negative side of him taking the stand. But, as Mr. Pulliam correctly put it, he was only interested in something that would get him a lesser charge on the terms that he had set forth. I could not obtain that result for him short of a trial. He elected to go to trial. I think he did think he had a good case. I certainly thought he had a credible self-defense but I never told him he was going to win his case or it was an absolute case, or anything like that.

Regarding the privilege against self-incrimination, Mr. Brannon testified that he explained to the Defendant that he did not have to testify, and he left that decision up to the Defendant. He said he told the Defendant that if he testified, the State could cross-examine him, and anything he said could be used against him. However, Mr. Brannon also said that he felt the Defendant would have to testify if he wanted to assert self-defense.

The trial court accredited the testimony of Mr. Brannon that he fully explained the plea process and the privilege against self-incrimination to the Defendant and found no ineffective assistance. The record clearly supports this finding. This issue has no merit.

## FAILURE TO PROPERLY IMPEACH

Finally, the Defendant asserts that Mr. Brannon did not effectively demonstrate that State witnesses Chris Body, Cameron Aldridge, and Robert Barr all had biased testimonies, and Mr. Brannon did not try to impeach their testimony or credibility, even after being told that Robert Barr had a criminal record. The Defendant did not, however, offer any other proof to support his allegations. Mr. Brannon could not remember the specifics of his cross-examination of these individuals, but he testified that he always tries to impeach witnesses' testimony. He did say that to his knowledge "there was an attempt by [his] office to obtain [criminal record] information about these individuals. The one we came up with, with the information, was on a Marcus Franklin. He had an extensive record." He explained that Marcus Franklin was the victim's brother.

This testimony by the Defendant falls far short of establishing by clear and convincing evidence that the Defendant's trial counsel was ineffective in his cross-examination of the State's

witnesses.  We simply cannot conclude from the Defendant's allegations that Mr. Brannon was ineffective in any way.  Moreover, the Defendant has failed to establish that but for Mr. Brannon's alleged deficient cross-examination, the results of the proceeding would have been different.  We stated in our opinion on the Defendant's direct appeal that "the record overwhelmingly supports findings of premeditation and deliberation."  Id. at 367.

## CONCLUSION

After reviewing the record, we conclude that the trial court did not err in finding that the Defendant received effective assistance of counsel at trial.  The Defendant failed to meet his burden of proving by clear and convincing evidence that Mr. Brannon's performance at trial fell below the range of competence for attorneys and that there was a reasonable probability that, but for Mr. Brannon's errors, the results of the proceeding would have been different.  Accordingly, the judgment of the trial court denying the Defendant's petition for post-conviction relief is affirmed.

_____
DAVID H. WELLES, JUDGE