J-S51031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FLOYD CONSTANTIN BOGLE | : | |
| | : | |
| Appellant | : | No. 592 MDA 2020 |

Appeal from the PCRA Order Entered March 16, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003127-2008

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED FEBRUARY 04, 2021**

Floyd Constantin Bogle (Appellant) appeals from the order of the Court of Common Pleas of Berks County dismissing his petition brought under the Post Conviction Relief Act (PCRA)[1] after a hearing.  This Court initially remanded this matter to the PCRA court for appointment of counsel and an evidentiary hearing on the issue of defense counsel's ineffectiveness. ***Commonwealth v. Bogle***, 495 MDA 2017 (unpub. memo. at 1) (Pa. Super. Oct. 19, 2017).  We affirm.

This Court recounted the circumstances surrounding the remand as follows:[2]

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] A fuller account of the underlying events and trial is available at ***Commonwealth v. Bogle***, 1078 MDA 2011 (unpub. memo. at 1-3) (Pa. Super. July 19, 2012).

On January 27, 2011, a jury found Appellant guilty of First–Degree Murder, Aggravated Assault, and Possession of an Instrument of Crime ("PIC") in connection with the fatal stabbing of his father. On March 16, 2011, the court sentenced him to a mandatory term of life in prison for First–Degree Murder with credit for time served, and a concurrent sentence of 4 to 24 months' incarceration for PIC.[3] This Court affirmed the Judgment of Sentence and the Pennsylvania Supreme Court denied allowance of appeal. *See Bogle*, 1078 MDA 2011, *appeal denied*, 63 A.3d 772 (Pa. 2013). On October 7, 2013, the United States Supreme Court denied Appellant's Petition for Writ of *Certiorari*. *Bogle v. Pennsylvania*, 134 S.Ct. 231 (2013).

On June 14, 2014, Appellant filed a 51–page *pro se* PCRA Petition. The court appointed counsel and on February 22, 2016, entered an Order providing counsel with 90 days to file an amended PCRA Petition. On April 29, 2016, counsel filed a Petition for Leave to Withdraw as Counsel, in which he also sought the court's permission for Appellant to represent himself. On May 4, 2016, Appellant filed a *pro se* Motion to Proceed *Pro Se*. The court held a status conference after which it deferred ruling on the Motions after counsel and Appellant had apparently worked out their differences and Appellant agreed to proceed with counsel representing him.

On October 6, 2016, the court entered an Order scheduling a PCRA Hearing. However, on October 31, 2016, PCRA counsel filed a *Turner*/*Finley* "no-merit letter" requesting leave to withdraw as counsel. *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Appellant filed a letter in response, and on December 9, 2016, he filed a *pro se* "First Supplement to PCRA Petition" ("First Supplement"). On December 30, 2016, the PCRA court filed a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907.

---

[3] Relevant to this appeal, on the first day of trial, Appellant rejected the Commonwealth's offer of an open *nolo contendere* plea to Third–Degree Murder on which the court informed him he could receive a sentence of 20 to 40 years' incarceration. *See* discussion, *infra*.

On January 17, 2017, the court granted counsel's request to withdraw from representation. On January 26, 2017, Appellant filed a *pro se* response to the Rule 907 Notice. On February 22, 2017, the Court entered the order dismissing Appellant's PCRA Petition. Appellant filed a timely *pro se* Notice of Appeal. . . .

*Bogle*, 495 MDA 2017 (unpub. memo. at 2-3).

Although Appellant raised several issues when this appeal was last before this Court, the Court remanded the case for a hearing on one issue: the impact of potential counsel ineffectiveness for failing to interject when the trial court mistakenly informed Appellant during a plea colloquy that if he were to be convicted of first degree murder, he would be sentenced to "a maximum of 25 [years to] life" in prison. *Bogle*, 495 MDA 2017 (unpub. memo. at 8). This is the exchange in its entirety:

The Court: Mr. Bogle, it's my understanding that you have chosen not to enter a plea of any kind and you're going to go to trial; is that correct?

[Appellant]: Yes, sir.

The Court: I think counsel for each of the parties wants to place on the record what that offer was and the fact that you've rejected it.

[Defense Counsel]: Your Honor, as defense understood, the offer was an open *nolo contendere* plea to third degree murder.

[Prosecutor]: That's correct, Your Honor.

The Court: Do you understand that, Mr. Bogle? Do you understand the no contest plea?

[Appellant]: Yes, I do.

The Court: Do you understand the difference between third[-] degree murder and first[-]degree murder, second[-]degree murder?

- 3 -

[Appellant]: In terms of?

The Court: In terms of the elements of the offenses.

[Appellant]: Yes, sir.

The Court: Do you understand the difference in possible sentencing?

[Appellant]: Yes, sir.

The Court: For each of those three crimes? Do you understand?

[Appellant]: You mean———

The Court: In other words, **first[-]degree murder, it would carry a maximum sentence of 25 years to life. Do you understand that?**

N.T. Plea Hrg. at 6–8 (emphasis added).[4]

This Court added that "[t]he court and defense counsel then explained that under the terms of the plea deal he was rejecting, the guidelines provided that with his past clean record, he could be sentenced to six years, although there was no guarantee that he would not get 20 to 40 years." ***Bogle***, 495 MDA 2017 (unpub. memo. at 10). Applying ***Lafler v. Cooper***, 566 U.S. 156 (2012), this Court stated that the Sixth Amendment plainly requires effective assistance at all critical stages, including the plea bargaining process. ***Bogle***, 495 MDA 2017 (unpub. memo. at 10-13).

---

[4] We note that Appellant was technically represented by two attorneys, but it is clear from the record that one attorney took a leading role in trial preparation and communication with Appellant. Thus when we refer to counsel, it is generally to that individual, though both were present during the flawed colloquy and neither interjected.

Here, it is clear that the trial court erred in telling Appellant during the plea colloquy that if he were convicted of First–Degree Murder, he would receive a sentence of 25 years to life imprisonment . . . It is also clear from the trial transcripts that plea counsel did not correct the court's incorrect statement at that time. Appellant's averment—that but for counsel's failure to correct the trial court and failure to inform him of the mandatory sentence of life without parole, he would have accepted the plea offer—raises an issue of merit.

*Id.* at 12.

Because the PCRA court had not at that point held an evidentiary hearing, this Court could not properly apply our standard for ineffective assistance claims.

Without such evidence, we are unable to determine whether Appellant has met the second and third prongs of the [***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1986)] test, i.e., whether there was a reasonable basis for counsel's action or inaction, and whether the outcome of the case would have been different but for those actions . . . [B]ecause of the grave liberty interest at issue here, we are constrained to remand for the PCRA court to appoint counsel and proceed with an evidentiary hearing on the issue of plea counsel's performance.

*Id.* at 13.

On November 13, 2019, the PCRA court held an evidentiary hearing on this claim of counsel's ineffectiveness. At the hearing, Appellant testified as follows:

I can remember that the D.A. comes to [trial counsel] and I, we had a discussion about an offer for third-degree murder, which at first I had accepted, then I rejected, because at the time of the offer, I think that [trial counsel] was not giving me all the facts about the plea offer. I did accept that offer. They came to sign it and everything when I was in the holdings area, and I did reject that offer. At that, counsel was — I believe that counsel was trying to get over with the case because of all that time and ups and downs and the situation of the case in general. That's my opinion.

Then I went before the Judge in which the Judge gave me, I thought, I believed, all the facts about the plea offer. The Judge told me it's first-degree murder, maximum sentence was 25 to life. And the Judge asked me not to — like I said, [not to] discredit the Judge either, I respect his office — asked me if I understood that. I said yes. And I did believe the Judge has the right and the power and the authority to give me that kind of sentence. The Judge also told me if I should accept that plea offer, of third degree, the maximum would be 20 to 40, and that I could get that time if I accept that plea offer, in which I told the Judge I understand that too.

That offer, again, was rejected by me because 20 to 40 and 25 to life was not much difference to me, because, in any case, I would still see the parole board if I accept 25 to life by losing a trial, or if I get 20 to 40. Therefore, going to trial was the right thing to do at that time to me, I believe, believing a win would be much better than the offer, and even if I would [lose], 25 to life would give me the hope to go home. That's my whole theory around that situation after hearing 25 to life.

But when the Judge sentenced me to life without parole, I asked both my counsel, why didn't I get 25 to life? And they told me, they believed they were ineffective and that I must remember to file an appeal that they were ineffective. And I did what I was told making this ineffective claim and this — excuse me — about this very case at hand right now.

So I did believe at that one point that 25 to life was the offer, the Judge had the authority to give me that, and I never got that.

N.T. PCRA Hrg., 11/13/19, at 5-6. It is plain from the transcript that, while Appellant has functional command of English, it is not his native tongue. *See id.* at 8 ("At that time of incarceration, my limited English, my limited understanding of the law, my limited knowledge in America and the United

States have given me the confidence that the Judge is the person to believe more than anyone else.").[5]

Trial counsel testified that the Commonwealth extended a pretrial offer to Appellant: if he entered a *nolo contendere* plea to third degree murder, the Commonwealth would recommend a sentence of seven and a half to fifteen years of incarceration. N.T. PCRA Hrg. at 16-17. Counsel also testified that he encouraged Appellant to take the deal, characterizing it as "very good" and that at the time, he explained to Appellant that in Pennsylvania, unlike in some other jurisdictions, "life means life." ***Id.*** Counsel also testified that he warned Appellant he was facing a potential life sentence as early as the preliminary hearing stage. ***Id.*** at 26. At that time, Appellant indicated to counsel that he would take the deal. ***Id.*** at 19. However, on the morning that Appellant was to go before the trial court and enter his plea, he informed counsel that he no longer wanted to take a plea. ***Id.*** at 20. Counsel also testified that Appellant told him that if he were to be deported to Jamaica after being convicted of his father's murder, he feared he would be killed. ***Id.*** at 28.

During the PCRA hearing, Appellant claimed that counsel did not advise him at the time (just prior to trial) that the Commonwealth was offering to recommend seven and a half to fifteen years. He stated that the PCRA hearing was "the first time I heard a number under 20 years." N.T. PCRA Hrg. at 47.[6]

---

[5] Appellant was born in Jamaica. N.T. PCRA Hrg. at 11.

[6] Trial counsel testified that he accurately conveyed the plea offer. ***Id.*** at 54.

He also expressed that after a failed Pa.R.Crim.P. 600 motion that the trial court apparently found to be waived, he lost confidence in trial counsel and therefore trusted the trial judge over counsel "because [trial counsel's] word failed me over and over." *Id.* at 48.

A PCRA petitioner raising a claim of ineffective assistance must prove, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). In evaluating constitutional ineffectiveness claims, we apply the **Pierce**/**Strickland** standard. **See Pierce**, 527 A.2d 973; **Strickland v. Washington**, 466 U.S. 668 (1984). To prove that counsel was ineffective, the petitioner must show that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the contested action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013) (citation omitted). We apply a *de novo* standard to a PCRA court's legal conclusions; the PCRA court's credibility determinations, when supported by the record, are binding on appeal. **See Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015); **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013).

A prior panel already established that the first prong is satisfied here – Appellant's claim had arguable merit as pled. ***Bogle***, 495 MDA 2017 (unpub. memo. at 12). We believe it self-evident that there was no reasonable basis for counsel's inaction – there could be no reasonable basis designed to effectuate Appellant's interest in failing to correct this misinformation at the time it was delivered or as soon as possible afterward.[7] The question, then, is whether Appellant established by a preponderance of the evidence that he suffered actual prejudice.

Appellant argues, as he must, that he was "certainly prejudiced by this error" and "the proceeding would have had a different outcome had his attorneys acted differently." Appellant's Brief at 11. The Commonwealth disagrees, asserting that Appellant had been warned on many occasions as to the actual penalty he was risking by forgoing the deal and pursuing trial. Commonwealth's Brief at 7.

The PCRA court answers in the negative as well, making a factual finding that counsel had informed Appellant on several occasions prior to trial that a conviction for first degree murder carried a mandatory life sentence without

---

[7] Counsel's chagrin at their inaction radiates from the pages of the PCRA hearing notes. We take this opportunity to observe that error is, unfortunately, a part of legal practice, as it is a part of medical practice and of life. ***See, e.g.,*** Atul Gawande, ***The Checklist Manifesto: How to Get Things Right*** (Metro. Bks. 2009). The attorneys who represented Appellant were public defenders, upholding one of our most precious constitutional protections under ***Gideon v. Wainwright***, 372 U.S. 335 (1963). It does not derogate in any way the seriousness of our present inquiry to say that, in that they have erred, they are in high and populous company.

the possibility of parole. PCRA Ct. Op. at 4. The PCRA court also found that Appellant "would not have accepted any offer that was presented to him by the Commonwealth – regardless of what this [c]ourt said." *Id.*[8] The PCRA court quotes Appellant as having said, after the flawed colloquy had continued its course, "Sir, I would not even take time served. I'm going to trial." *Id.* at 9.

It would be impossible to disregard the trial court's credibility assessments, and therefore Appellant's claim cannot merit relief, as he cannot establish by a preponderance that but for counsel's inaction he would have changed his mind a second time (at least) and taken the plea that he had announced just that morning he would not take, as he boldly declaimed at the colloquy's close. We note that Appellant's testimony, while critical of trial counsel, seems to articulate (in layman's terminology) a different theory than the one presented on paper: because the attorney-client relationship had deteriorated (due, in part, to the trial court's apparent finding of waiver in a motion Appellant viewed as very important), and because it was not

---

[8] In its recounting of the facts adduced at the PCRA hearing and its findings thereof, the PCRA court misstates one important point. Its opinion reads "During the PCRA hearing, [Appellant] explained that if he was convicted of murder, he would be deported to Jamaica where his life would likely be in danger as retribution for the murder." Trial Ct. PCRA Op. at 8, *citing* N.T. PCRA Hrg at 28, 30, 31). It was **trial counsel** who testified that this was so, not Appellant. Appellant testified that this was false, and that he was trying to explain to counsel that there are significant differences in the systems of justice in Jamaica and the United States. He testified, "I was not telling him that I was afraid of going back to Jamaica. I was not telling him that people were going to kill me in Jamaica. I was just telling him about how the Jamaica system runs comparing to the United States system." N.T. PCRA Hrg. at 44.

unreasonable for him, under those conditions, to put greater stock in the word of a judge than the advice of counsel, his plea refusal was not knowingly made. However, this theory is not before us and was not presented to the trial court in pleadings, and therefore we need not proceed in uncharted waters.

Order affirmed.

Judge Murray joins this Memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2021