Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,404-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                         Plaintiff-Appellee

versus

TRINITY D. PHILLIPS                        Defendant-Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 23-CR-33613

Honorable Nicholas E. Gasper, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for
By: Christopher Albert Aberle         Defendant-Appellant

CHARLES BLAYLOCK ADAMS               Counsel for
District Attorney                     Plaintiff-Appellee

EDWIN L. BLEWER, III
PAMELA ROXANNE MOSER
RHYS E. BURGESS
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before COX, STEPHENS, and HUNTER, JJ.

**HUNTER, J.**

Defendant, Trinity D. Phillips, was charged by bill of information with molestation of a juvenile under the age of 13, in violation of La. R.S. 14:81.2(A)(1) and (D)(1). Following a jury trial, defendant was found guilty as charged. He was sentenced to serve 99 years at hard labor, with 50 years to be served without the benefit of probation, parole, or suspension of sentence. For the following reasons, we affirm.

## FACTS

C.B. became involved in a romantic relationship with defendant, Trinity D. Phillips, and she and her two minor children moved into a residence with defendant and his father in DeSoto Parish. K.D. is C.B.'s daughter, and she was nine years old when the family moved into the residence with defendant.[1] In 2019, K.D. was 11 years old, and she and her brother moved to Tennessee to live with N.B., their maternal grandmother. Over time, N.B. noticed K.D. was exhibiting symptoms of anxiety and anger, and she was having difficulty sleeping at night. K.D. revealed to N.B. that defendant had sexually abused her during the years she and her family lived with him.

In January 2022, N.B. contacted the DeSoto Parish Sheriff's Office and spoke to a detective about the allegations of sexual abuse. On January 19, 2022, K.D., who by then was 14 years old, underwent a forensic interview at a child advocacy center in Tennessee.

Defendant was subsequently interviewed twice by law enforcement officials. During both interviews, defendant denied molesting K.D. On

---

[1] K.D.'s date of birth is May 7, 2008; defendant's date of birth is December 5, 1975.

April 17, 2023, defendant was arrested and charged with molestation of a juvenile under the age of 13, in violation of La. R.S. 14:81.2(A)(1) and (D)(1).

During the trial, K.D. testified she lived in the residence with defendant until she was 11 years old. She stated everything "was good" when they first moved into the house with defendant, but "then he started touching me, and then I was terrified." Regarding the sexual abuse, K.D. testified as follows:

> [Defendant] touched me in my vagina and played and touched, and he made me touch him. Like, made me do hand jobs on him, and he stuck his penis in my butt. That – he did that once, and we – like in – we had a pool, and he made us – me and my friend *** he made use do flips in the pool, like with our underwear off, and he played with me in the pool. Like, my body parts in the pool, too. He made me watch porn and he watched me when I used the bathroom. And he slept with me, and this all happened when my mom was working or – and when my brother was asleep at night.
> ***

K.D. further testified the sexual abuse occurred when she was nine, ten, and eleven years old and defendant was "in his forties." She explained the sexual acts took place "every single day, up to when we moved [to Tennessee], from nine to eleven." K.D. testified defendant would put his fingers in her vagina and "play with it, and, like, rub it, and stuff." She also stated defendant instructed her to kneel in front of his recliner and showed her how to touch his penis. She stated, "He showed me how to do it first, and then I did it. Like, my – at first, it was like his hands, and then my hands on top of, like, his." She stated, after defendant ejaculated, he ordered her to "get the towel . . . to clean it up."

K.D. further described an incident during which she pretended to be asleep. She stated defendant took her "bottoms off and then touched me and

2

played with [her] vagina." She also testified she refused defendant's attempts to put his penis in her mouth. According to K.D., defendant knew she liked eating pickles, and he offered to put pickle juice on his penis to persuade her to put it in her mouth.

K.D. also described an incident when defendant "stuck his penis in [her] butt." She testified she and defendant were on his bed "watching porn, and then he, like bent me over, like, the bed, and took my stuff off and did it." She stated defendant "used lubrication," and when he finished, they got dressed because it was almost time for her mother to come home. Further, K.D. testified defendant showed her his sex toys, and he would "watch" her when she used the bathroom.[2] K.D. further testified she did not disclose the sexual abuse to anyone because she "was terrified." She stated she waited to disclose the abuse until she felt she "could be protected" because her mother was still in an "off and on" relationship with defendant.[3]

K.N., a close friend of K.D. who lived down the street from defendant, also testified at trial. K.N. testified defendant sexually abused her when she would visit K.D. at their home. K.N. described incidents at the swimming pool at defendant's home when defendant "would tug our bathing suit bottoms down and would try to touch us in ways that you shouldn't touch a kid." More specifically, K.N. explained defendant pulled her bathing suit bottoms down and tried to touch her "between [her] legs." She

---

[2] K.D.'s testimony also revealed she was familiar with ejaculation. She testified defendant "cummed" sometimes during the acts of abuse, and sometimes he did not.

[3] K.D. also stated she told her mother about the sexual abuse after she moved to Tennessee, but her mother, who still lived in Louisiana, told her not to say anything "until we all got up there [to Tennessee] because she didn't want to get in trouble for not reporting it and not doing nothing about it." K.D. testified her mother also told her to tell the authorities she (the mother) did not know anything about the sexual abuse.

3

stated defendant stopped his actions when his father came outside. K.N. testified she reported defendant's actions to his father, and defendant and his father "had gotten into an argument about it."[4] K.N. also described another incident during which she and K.D. were in K.D.'s bedroom. K.N. testified defendant "tried to do it again," but she "kneed him . . . where it didn't feel good to be hit" and fled.

K.N. also testified she was aware of some of the abuse K.D. suffered, and she confided in K.D. about what defendant did to her. K.N. stated she did not disclose the abuse to anyone else, including her parents, because defendant threatened her and K.D. by telling them they would "get in trouble, and that stuff would happen." She also testified she did not want to talk about the abuse. During cross-examination, K.N. testified she began to limit her visits to defendant's house after he touched her inappropriately. She stated she only went to the house when K.D.'s mother was there.

Kelsi Benson, a forensic interviewer, conducted K.D.'s interview at the advocacy center, and she was accepted by the trial court as an expert in forensic interviewing. Benson explained K.D.'s delay in reporting the acts of abuse is because many children who are victims of sexual abuse do not want to talk about being abused.

Christine Landry, the wife of one of defendant's friends, testified for the defense. She stated she and her family spent considerable time with defendant and his family, and defendant "acted like a father figure" when he interacted with K.D. and her brother. She stated she never witnessed him acting inappropriately with K.D. During her testimony on cross-

---

[4] Defendant's father passed away in "late 2020 or early 2021."

4

examination, Landry admitted her husband was a registered sex offender, but she denied being aware that her husband was prohibited from being around children who were not his biological children.

Defendant's mother, Shirley Loftin, testified she frequently visited defendant, C.B., and C.B.'s children when they lived together. Loftin described the children as "happy," and she testified they did not behave in a shy or reserved manner when they interacted with defendant. She also testified that she never saw defendant touch K.D. in an inappropriate manner.

Defendant testified in his own defense. He admitted he has a criminal history consisting of "three felony convictions" and "maybe four or five" misdemeanor convictions. Defendant described his relationship with K.D. as "good for the most part," and he admitted that he physically disciplined the children. He stated he was the father figure and disciplinarian for K.D. and her brother because "they had never had any real discipline in their lifetime." Defendant testified that when K.D. was approximately seven years old, he "spanked [K.D.'s] naked little hiney" because she was running around the house naked. However, defendant denied molesting or touching K.D. inappropriately, and he stated he did not know why K.D. and her grandmother would make such allegations.

Defendant also testified he could not have molested K.D. due to the erectile dysfunction he was experiencing during the relevant timeframe. He explained his medical and physical conditions as follows:

> I have low testosterone, which causes erectile dysfunction, and I have neurological or nerve damage, still, in the lower left-hand region of my body. And that includes the genital area. *** I can't get an erection without taking erectile dysfunction medication, such as Viagra.

Defendant was questioned about K.D.'s reference to "sex toys." Defendant explained he and C.B. utilized sex toys because he was unable to "get an erection to have sexual relations with a female, so they were for [C.B.]'s pleasure." He testified the sex toys were stored in a "safety lock box" inside his bedroom, and only he and C.B. had access to the box. Defendant further testified K.D. and her brother were aware the box was in the bedroom, but they did now know what was inside the box.

Defendant also denied the allegations made by K.N. He recalled "a little girl" was "doing flips" in the swimming pool, and "her bottoms were a little big, and it exposed her hiney." He stated he did not instruct K.N. to do flips, and he told her that she "needed to quit." Defendant denied ever touching K.D. or K.N. inappropriately, and he stated he was "hurt" when they made the allegations because he "didn't do anything," and "there's nothing [he] can do to prove it."

Defendant also denied penetrating K.D.'s anus with his penis, explaining he was unable to have sexual relations "involving [his] penis" with anyone during that period. He clarified he used his fingers, mouth, and sex toys to engage in intimate relations with C.B. during the years she and her children lived with him. Defendant also admitted he told the detective he enjoyed "a little anal sex"; however, he explained that he enjoyed "receiving" anal penetration "in the context of female dominance."[5]

---

[5] Defendant also denied telling the detective that he received testosterone injections "on and off for years" to treat his erectile dysfunction. He stated he took oral testosterone "in 2002/2005 area," and he did not begin using the injections until after C.B. left him in June of 2018.

After hearing the testimony and reviewing the evidence, the jury unanimously found defendant guilty of molestation of a juvenile under the age of 13. The trial court denied defendant's motions for new trial and post-verdict judgment of acquittal.

Prior to the sentencing hearing, defendant received and signed the form advising him of his obligation to register as a sex offender in accordance with La. R.S. 15:543. During the sentencing hearing, the trial court reviewed the presentence investigation report and defendant's criminal, family, social, medical, educational, and employment history. The court noted defendant completed the 11th grade before earning his graduate equivalency degree/general education diploma ("GED"), and he was a self-taught mechanic and welder. The trial court also noted defendant was 48 years old with various physical limitations, including a "bad back, left hip, and left leg," muscular atrophy, and foot drop caused by a bicycle accident when he was 17 years old. The court also stated defendant was born with "mild autism," had been diagnosed with bipolar disorder, and had been receiving supplemental security income benefits since the age of 20. Further, the court noted defendant's "long history of substance abuse, including the use of meth, cocaine, prescription medication, including Xanax, Lortab, Morphine, and alcohol," stating defendant had been treated for substance abuse at two facilities.[6]

The trial court also detailed defendant's criminal history, which included 15 arrests since 1993. The defendant's criminal convictions

_____

[6] Defendant interjected and informed the trial court that only one of his admissions to mental health facilities involved substance abuse treatment. He stated he was admitted to one of the facilities "for trying to commit suicide."

included felony theft, driving while intoxicated, third offense, two counts of distribution of a Schedule II controlled dangerous substance ("CDS"), and possession with intent to distribute a Schedule I CDS. The trial court also noted K.D.'s victim impact statement and the significant impact defendant's actions have had on her life. The court gave defendant an opportunity to make a statement, and defendant stated, "You might as well give me [99] years."

The trial court noted the sentencing range for molestation of a juvenile under the age of 13 is 25 to 99 years. The court also stated it had considered the factors set forth in La. C. Cr. P. art. 894.1, the severity of the offense, the sentencing range, the extent of defendant's criminal history, and defendant's "suggestion." The trial court imposed a sentence of 99 years at hard labor, with credit for time served. Defense counsel orally requested reconsideration of the sentence. Thereafter, the trial court conducted another hearing to correct defendant's sentence. During the hearing, the court acknowledged its failure to note a period of time to be served without benefits. The trial court resentenced defendant to serve 99 years hard labor, with 50 years to be served without the benefit of probation, parole, or suspension of sentence. Defense counsel re-urged the motion to reconsider sentence "based off [defendant]'s emotional state at that time." The court denied the motion to reconsider sentence.

Defendant appeals.

## DISCUSSION

Defendant argues he was denied effective assistance of counsel at his sentencing hearing, in violation of the Sixth Amendment to the United States Constitution. He argues his trial counsel made two oral motions to

8

reconsider sentence; however, counsel failed to articulate any grounds for the motion. More specifically, defendant argues after the second oral motion to reconsider, trial counsel stated defendant was "emotional" (an apparent reference to defendant's statement that the court "might as well sentence me to 99 years"). However, counsel did not articulate any other reasons for urging the motion to reconsider. Defendant asserts that due to counsel's failure, the appeal of his sentence is limited to the bare claim of constitutional excessiveness, and he is barred from raising a claim that the district court failed to articulate and follow the factors set forth in La. C. Cr. P. art. 894.1(C).

The Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution guarantee a criminal defendant's right to the effective assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 1333; *State v. Bayles*, 53,696 (La. App. 2 Cir. 11/17/21), 329 So. 3d 1149. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court established the two-prong test for a defendant claiming ineffective assistance of counsel. Under the standard for ineffective assistance of counsel set out in *Strickland*, *supra*, and adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Ball*, 19-01674 (La. 11/24/20), 305 So. 3d 90; *State v. Bayles*, *supra*.

9

Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because this provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445; *State v. Ward*, 53,969 (La. App. 2 Cir. 6/30/21), 324 So. 3d 231. However, when the record is sufficient, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *Id.*

In the instant case, the appellate record is sufficient to dispose of defendant's claim of ineffective assistance of trial counsel. Defendant asserts that but for defense counsel's deficient performance, he could have challenged his sentence on appeal on specific grounds. Although defendant fails to identify any particular basis for challenging the sentence, his chief complaint is that he is precluded from raising the claim that the trial judge failed to comply with La. C. Cr. P. 894.1. Defendant is correct in that he is relegated to urging a claim of bare constitutional excessiveness; however, remand for more complete compliance with La. C. Cr. P. art. 894.1 is not necessary when the record, otherwise, clearly supports the sentence.

Herein, defendant does not articulate any facts to indicate that he would have received a lesser sentence but for defense counsel's failure to urge reconsideration of the sentence on specific grounds, and he has failed to establish setting forth specific grounds for his motion to reconsider that would have resulted in a different sentence. Furthermore, the record reflects the trial court adequately articulated reasons to support defendant's sentence. The court considered defendant's background, including his age, family history, educational and employment background, and criminal history. The court also considered defendant's medical history, including defendant's

10

physical limitations resulting from a bicycle accident at the age of 17, and his history of substance abuse, for which he has undergone treatment. Additionally, the trial court noted defendant's criminal history, which included multiple arrests and convictions for felony theft and distribution of controlled dangerous substances. Based on the foregoing, we find defendant has not met his burden to support a claim of ineffective assistance of counsel.

Defendant also argues the 99-year sentence, the maximum sentence possible for molestation of a juvenile under the age of 13, is cruel and unusual punishment, and therefore, is constitutionally excessive. Defendant acknowledges the sentencing range for molestation of a juvenile under the age of 13 is 25-99 years, with at least 25 years to be served without the benefit of probation, parole, or suspension of sentence. Nonetheless, he argues the trial court imposed the 99-year sentence without explaining why the court believed defendant deserved the maximum sentence. Defendant also argues it was "improper" for the trial court to consider his emotional statement, "You might as well give me 99 years," in imposing the sentence. He maintains the judge was aware that he suffers from autism and bipolar disorder, both of which made it difficult for him to "deal with his emotions at sentencing." Defendant further argues that maximum sentences are reserved for the worst offenders who commit the worst offenses. Moreover, defendant asserts that, even if this Court considers only a bare claim of constitutional excessiveness, then the sentence should be vacated because it is grossly disproportionate to the severity of the offense and is shocking to the sense of justice.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

A trial court has wide discretion to sentence within the statutory limits; absent a showing of manifest abuse of that discretion, such a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579. The sentencing court is not limited to considering only prior convictions and may review all evidence of prior criminal activity, including evidence that would otherwise be inadmissible at trial, *e.g.*, prior arrests, hearsay evidence of suspected criminal acts, conviction records, and evidence of uncharged or nol prossed offenses. *State v. Washington*, 414 So. 2d 313 (La. 1982); *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116.

Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than 25 years nor more than 99 years. At least 25 years of the

12

sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.  La. R.S. 14:81.2(D)(1).

As noted above, the trial court weighed the evidence and sentencing factors set forth in La. C. Cr. P. art. 894.1.  The trial court noted K.D. was the young daughter of defendant's live-in girlfriend, and she was frequently left alone with defendant while her mother worked.  Defendant acted as the primary caretaker and disciplinarian for K.D., and he clearly exercised control over her.  The court further noted defendant "requested inappropriate sexual favors from the victim," who was between the ages of nine and twelve years old when the acts of molestation occurred.  Moreover, the trial court noted the severity of the acts of molestation, which included an attempt to penetrate K.D.'s anus, and the significant effect the acts of molestation had on K.D.'s life.  The trial court properly considered the aggravating factors and outlined the factors it found to have applied, as detailed above. The court further considered the mitigating factors, including defendant's physical ailments and limitations, mild autism, bipolar disorder, and history of substance abuse.

Although a maximum sentence, the 99-year sentence-imposed falls within the sentencing range.  This is a case of a mother's live-in boyfriend convicted for repeatedly molesting her young daughter.  The evidence established that K.D. did not have a father figure in her life, and defendant filled that role, often acting as the sole caretaker for K.D. and her brother while their mother worked to financially provide for them.  The evidence also established that defendant abused his position of trust for his own gratification and to the detriment of K.D., resulting in significant injuries to

13

her.  Furthermore, the record revealed that defendant has not accepted responsibility for his actions and has shown no remorse.

As a reviewing court, we do not determine whether another sentence would have been more appropriate.  Although we may not have imposed this sentence, the trial court's reasons for sentencing are sufficient to uphold the sentence.  Consequently, we do not find that the trial court abused its discretion in sentencing defendant to the maximum sentence.

## CONCLUSION

For the reasons set forth herein, defendant's conviction and sentence are affirmed.

**AFFIRMED.**